PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14216-FF
_____

ROGER NICKLAW,
on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

versus

CITIMORTGAGE, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

Before ED CARNES, Chief Judge, TJOFLAT, MARCUS, WILSON, WILLIAM
PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL
PRYOR, Circuit Judges[*].

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in

active service having requested a poll on whether this case should be reheard by

the Court sitting en banc, and a majority of the judges in active service on this

_____

[*] Judge Hull, having recused herself, did not participate.

Court having voted against granting a rehearing en banc, it is ORDERED that this case will not be reheard en banc.

WILLIAM PRYOR, Circuit Judge, joined by MARCUS, Circuit Judge, respecting the denial of rehearing en banc:

A majority of the Court has voted not to rehear en banc our decision in *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), which held that a mortgagor lacked standing to complain—two years after the fact—that his lender recorded the satisfaction of his mortgage more than 90 days after that satisfaction occurred. *Id.* at 1000–01. As members of the panel, we write in respect of that decision and to respond to the errors in the arguments made by our dissenting colleague.

Roger Nicklaw satisfied his mortgage in July 2012, but his lender, CitiMortgage, Inc., failed to record the satisfaction until October 2012. *Id.* Two years later, Nicklaw filed a putative class action against CitiMortgage alleging that CitiMortgage violated two New York statutes that require a lender to file a certificate of discharge with the county clerk within thirty days after a mortgagor satisfies his mortgage. N.Y. Real Prop. Law § 275; N.Y. Real Prop. Acts. Law § 1921. If the lender fails to record the certificate within 30 days, it is subject to a statutory penalty of $500 payable to the mortgagor. That amount increases to $1,000 after 60 days and $1,500 after 90 days.

Nicklaw's complaint alleged only speculative harms to the market for residential property. He alleged that "banks frequently fail to comply with their obligations to timely file mortgage satisfactions," and, as a result, "there is a real

3

possibility that a large loss by a title company . . . may disrupt the entire system for transferring residential property in New York State." Nicklaw Compl. 4. He alleged that "[t]he failure to timely present a mortgage satisfaction can also frustrate landowners who need a marketable title to complete a property sale." *Id.* And he stated that the New York legislature enacted the statutes at issue "[t]o address lenders' failure to present mortgage satisfactions in a timely manner." *Id.* But Nicklaw neither alleged that he had suffered any concrete harm nor that he was at risk of incurring any future harm as a result of the earlier delay in recording the certificate of discharge.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), made clear that the role of the legislature in "identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* As a result, when a plaintiff alleges that a statutory requirement has been violated, courts must determine whether the "violations alleged . . . entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

Nicklaw's complaint failed to allege a concrete injury. To be sure, CitiMortgage recorded the satisfaction of Nicklaw's mortgage more than 90 days

after it was required to record the satisfaction. But Nicklaw filed his lawsuit in October 2014—*two years* after CitiMortgage recorded the satisfaction of his mortgage—and he failed to allege that the violations of the statutes had harmed him in the past or put him at risk of any future harm, let alone any of the harms identified in Judge Martin's dissent. *See* Martin Dissent at 10. Indeed, any risk of future harm was eliminated years before Nicklaw filed this lawsuit when CitiMortgage recorded the satisfaction of his mortgage. Our dissenting colleague cites no decision of the Supreme Court that holds—or even hints—that a plaintiff has standing to sue because he faced a risk of harm that never materialized and has since disappeared. Nicklaw's complaint alleged only that the statutes were violated years before he filed his complaint. This bare allegation of a statutory violation that has since been remedied is not sufficient to satisfy the requirement of concreteness in Article III. *See, e.g.*, *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (explaining that a customer who alleged that his cable company retained his personal information in violation of a federal statute had not established a concrete injury in part because he failed to identify any material risk of harm caused by the statutory violation); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514–15 (D.C. Cir. 2016) (holding that customers who alleged that a retailer violated a consumer protection law when it requested their zip codes failed to establish a concrete injury because the customers did not allege any injury

beyond a statutory violation); *Zia v. CitiMortgage, Inc.*, ___ F. Supp. 3d ___, No. 15-cv-23026, at *8–9 (S.D. Fla. Sept. 26, 2016) (explaining that a mortgagor who alleged that CitiMortgage violated the New York statutes failed to establish a concrete injury because he did not allege any tangible harm, intangible harm, or material risk of harm from the statutory violation); Order at 9, *Villaneuva v. Wells Fargo Bank, N.A.*, No. 13-cv-5429-CS-LMS & *Bowman v. Wells Fargo Bank, N.A., et al.*, No. 14-cv-648-CS-LMS (S.D.N.Y. Aug. 5, 2016) (granting leave for mortgagors to amend their complaint after determining that an allegation that their lenders violated the New York statutes failed to establish a concrete injury because the mortgagors alleged only that the lenders violated the statutes).

Contrary to the depiction in Judge Martin's dissent, *see* Martin Dissent at 10, the New York statutes cited in Nicklaw's complaint do not involve a plaintiff's statutory right to truthful information. *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), held that a "tester" who poses as a renter suffers a concrete injury when a real estate agent fails to provide him with truthful information about available housing in violation of the Fair Housing Act, 42 U.S.C. § 3604. 455 U.S. at 373. The Supreme Court explained that the Act "confers on all 'persons' a legal right to truthful information about available housing," so all persons have standing to sue when they are denied that information. *Id.* at 373–74. But unlike the Fair Housing Act, the New York statutes do not confer a "right to truthful information"

6

on a mortgagor. If anything, the New York statutes confer a right to truthful information on other individuals—that is, the statutes provide a mortgagor a cause of action when the satisfaction of his mortgage is not recorded for *others* to see. *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), likewise explained that a voter suffers a concrete injury when a political organization fails to disclose campaign finance information to him in violation of a statute requiring disclosure. *Id.* at 21. The voter suffers a concrete injury because, as a result of the failure to disclose, he cannot obtain information about the political donations of the organization. But violations of the New York statutes do not prevent a mortgagor from obtaining information about the satisfaction of his mortgage. The mortgagor already knows that he has discharged his contractual obligation. The violations instead prevent other people from obtaining that information because public records would still report a mortgage on the unencumbered property.

The New York statutes are more like the statute at issue in *Spokeo*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*, which required that credit reporting agencies "'follow reasonable procedures to assure maximum possible accuracy of' consumer reports." *Spokeo*, 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681e(b)). *Spokeo* explained that a violation of the Act will not always cause a consumer to suffer a concrete injury. *See id.* at 1550. Unlike a statute that confers a right to truthful information to a plaintiff, a violation of the Act alone might not "cause

7

harm or present any material risk of harm." *Id.* As we have explained in other contexts, the violation of a legal right alone does not satisfy the concrete injury requirement. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) (explaining, in the context of the Telephone Consumer Protection Act, that "where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights").

The panel opinion adhered to the requirement of a concrete injury under Article III, as explicated in *Spokeo*. It held that Nicklaw's complaint failed to allege that he suffered a concrete injury when the New York statutes were violated and that he failed to allege a risk of any future harm. CitiMortgage remedied Nicklaw's earlier risk of harm when it recorded the certificate of discharge two years before he filed his complaint. Because the panel opinion is correct, we agree with our decision not to rehear this appeal en banc.

MARTIN, Circuit Judge, dissenting from the denial of rehearing en banc:

I asked the members of this Court to rehear the panel opinion in Nicklaw v. CitiMortgage, Inc., 839 F.3d 998 (11th Cir. 2016).  I dissent from the Court's decision to let the panel's decision stand as our precedent.  Roger Nicklaw's satisfaction of his mortgage was not recorded by CitiMortgage within the time limit set by New York law.  The New York statutes at issue here give property owners the right to have truthful information posted about their property.  The New York legislature set up this system to address the serious harms that can befall property owners when satisfaction of their mortgages is not timely recorded.  These harms include clouded titles, which can affect a person's ability to get credit and make it difficult to transfer even unencumbered real estate.

Mr. Nicklaw alleged that CitiMortgage violated New York law, that he suffered these material risks of harm from CitiMortgage's inaction, and that as a result, CitiMortgage was liable to him for statutory damages.  According to the Supreme Court's standing jurisprudence, these allegations are enough to give Mr. Nicklaw Article III standing.  Indeed the Supreme Court's most recent decision on Article III standing, Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540 (2016), demonstrates that Mr. Nicklaw has met the injury-in-fact requirement.  But this Court's panel decision misreads Spokeo as well as Mr. Nicklaw's allegations.  And in doing so, the opinion may close the door to other litigants with statutory claims

9

like Mr. Nicklaw. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). Mr. Nicklaw is entitled to have his day in court, and I dissent to this Court's decision to turn him away.

## I.

Mr. Nicklaw sold his New York home. He used the proceeds to satisfy the balance he owed CitiMortgage on that property's mortgage. Once the balance had been satisfied, New York law required CitiMortgage to file a certificate of discharge with the county clerk within 30 days. N.Y. Real Prop. Law § 275(1); N.Y. Real Prop. Acts. Law § 1921(1). This certificate of discharge acts as public notice that Mr. Nicklaw satisfied his mortgage. See id. The same New York law imposes liability on the mortgage holder if it does not timely make the required filing. Id. The amount of that liability increases over time: $500 after 30 days; then $1,000 after 60 days; and topping out at $1,500 after 90 days. Id. Because CitiMortgage did not record the satisfaction of Mr. Nicklaw's mortgage for 107 days, it owed him $1,500 under New York's penalty provision. See id.

On July 16, 2013, Mr. Nicklaw filed a class-action complaint against CitiMortgage in federal court in the Southern District of Florida. On August 23, 2013, CitiMortgage made an offer of judgment to Mr. Nicklaw pursuant to Rule

68.  Even though Mr. Nicklaw refused this offer, CitiMortgage relied upon its offer to render his case moot before it could be certified as a class action.  Our precedent allowed this at the time.  However, a short time after Mr. Nicklaw turned down the offer of judgment, both this Court and the Supreme Court rejected the practice of mooting class actions in this way.  See Stein v. Baccaneers Ltd. P'ship, 772 F.3d 698, 703–04 (11th Cir. 2014); Campbell-Ewald Co. v. Gomez, 577 U.S. ___, 136 S. Ct. 663, 666 (2016).

Based on this change in the law, Mr. Nicklaw brought his case again.  Since the identical facts of Mr. Nicklaw's two cases were due to be evaluated under evolving legal rules, his second case raised interesting questions about collateral estoppel and issue preclusion.  Then, before this Court had a chance to resolve these questions, the Supreme Court ruled in Spokeo.  Citing Spokeo, CitiMortgage asked the panel to dismiss Mr. Nicklaw's appeal for lack of subject-matter jurisdiction.  CitiMortgage argued Mr. Nicklaw did not have standing because he could not demonstrate injury-in-fact under the standard the Supreme Court articulated in Spokeo.  The panel adopted CitiMortgage's argument, and dismissed Mr. Nicklaw's case.

## II.

Article III of the Constitution limits the power of the federal courts to decide cases and controversies.  U.S. Const. Art. III § 2.  The Supreme Court has said that

a plaintiff must meet three minimum requirements in order to bring a case in federal court: injury-in-fact, causation, and redressability. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992). When pleading his case, a plaintiff must make "general factual allegations of injury resulting from the defendant's conduct." Id. at 561, 112 S. Ct. at 2137. As his case proceeds, however, the plaintiff must point to specific facts in support of those allegations in order to survive summary judgment. Id.

The panel decided Mr. Nicklaw's case based on the injury-in-fact requirement. As I mentioned, the Supreme Court's most recent guidance on this requirement came in Spokeo. Spokeo is a "people search engine" that aggregates various databases to accumulate a host of information about anyone who is the subject of a search. Spokeo, 136 S. Ct. at 1544. Thomas Robins sued Spokeo, alleging it had violated his rights and the rights of others under the Fair Credit Reporting Act of 1970 ("FCRA"), 15 U.S.C. § 1681 et seq., because Spokeo gathered and disseminated information about them that was not true. Id. The FCRA requires accuracy in consumer reports, and when these requirements are violated, the reporting agency is made liable for actual damages or statutory damages of $100 to $1,000 per violation; costs of the action and attorney's fees; and possible punitive damages. Id. at 1545. Mr. Robins said Spokeo wrongly reported he was married, had children, was in his 50's, had a job, was relatively

affluent, and held a graduate degree. Id. at 1546. The Ninth Circuit ruled that Mr. Robins had standing. Id. at 1544–45. But the Supreme Court sent the case back to the Ninth Circuit, saying that court had been incomplete in its analysis of Mr. Robins's injury-in-fact. Id. at 1545. Specifically, the Supreme Court said the Ninth Circuit failed to analyze Mr. Robins's alleged injury for concreteness. Id.

In the process, the Spokeo Court made several important observations about standing. For example, the Court explained that injury-in-fact is a constitutional requirement and legislation granting the right to sue cannot overcome the requirement for a plaintiff who would not otherwise have standing. Id. at 1547–48. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560, 112 S. Ct. at 2136). For an injury to be concrete, it must be "de facto; that is, it must actually exist." Id. (quotation omitted). Thus, the injury must be real. Id. at 1548–49. But at the same time it can be intangible—like an injury to free speech or free religious exercise. Id. at 1549.

The Supreme Court told us that when we decide whether an intangible injury is concrete, we must consider both history and legislative judgments. Id. For example, a legislative body may decide to elevate intangible harms, previously deemed inadequate to confer standing, into legally cognizable injuries. Id. On the

13

one hand, a legislative judgment that a "bare procedural violation" constitutes an injury does not create concreteness. Id. On the other, any real harm or "risk of real harm" stemming from that legislative judgment can satisfy the concreteness requirement. Id. In this regard, the Supreme Court said "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. The Court pointed to libel, slander, and its ruling in FEC v. Akins, 524 U.S. 11, 118 S. Ct. 1777 (1998) (recognizing a violation of a statutory right to information as a sufficient injury-in-fact for Article III standing), as examples. See id.

As for the Spokeo case itself, the Court observed that Congress "plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." Id. at 1550. The Court went on to point out that not every violation of those procedures was enough to show concreteness. Id. By way of example, the Court said something on the level of an incorrect zip code would not be enough for a concrete harm. Id. But other types of false information can suffice. See id. at 1550 & n.8. Acting on this distinction, the Court remanded Mr. Robins's case for the Ninth Circuit to finish its analysis of whether his injury was sufficiently concrete. Id. at 1550. Justice Thomas concurred, adding his thoughts about how the public-private rights distinction played into this analysis. See id. at 1550–54 (Thomas, J., concurring). He wrote that "[i]f Congress has created a private duty owed personally to [a plaintiff] to protect his information,

14

then the violation of the legal duty suffices for Article III injury in fact." Id. at 1554. Justice Ginsburg, joined by Justice Sotomayor, dissented, not because she disagreed with the Court's reasoning, but because she would have held that Mr. Robins had sufficient injury based on the record already before the Supreme Court. See id. at 1554–56 (Ginsburg, J., dissenting). She wrote that "[f]ar from an incorrect zip code, Robins complains of misinformation about his education, family situation, and economic status, inaccurate representations that could affect his fortune in the job market." Id. at 1556. This, she thought, was enough to give Mr. Robins standing. Id.

Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S. Ct. 1114 (1982), is another case helpful for evaluating whether Mr. Nicklaw has standing. In Havens Realty, the Court examined whether a "tester plaintiff" met the injury-in-fact requirement for standing in a Fair Housing Act lawsuit. See id. at 366–75, 102 S. Ct. at 1118–22. This "tester plaintiff" was employed to see how Havens Realty interacted with her, and whether Havens was unlawfully steering potential tenants on the basis of their race. The tester plaintiff was not actually going to rent or purchase a home or apartment, but instead she posed as a renter or purchaser so she could collect evidence of unlawful steering practices. Id. at 373, 102 S. Ct. at 1121. The Court held that despite the plaintiff's pretend status, "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating

15

legal rights, the invasion of which creates standing." Id. (quotation omitted and alteration adopted). The Court concluded that the Fair Housing Act "establishes an enforceable right to truthful information concerning the availability of housing" and a tester who received false information "suffered injury in precisely the form the statute was intended to guard against, and therefore ha[d] standing." Id. at 373–74, 102 S. Ct. at 1121.

## III.

We must faithfully apply the Supreme Court's precedent to the facts of Mr. Nicklaw's case. For the reasons that follow, I don't think the panel did so. Although Spokeo was made up of three separate opinions, all eight Justices agreed that alleging a FCRA violation with a risk of real harm was sufficient to meet the Article III standing requirements. See Spokeo, 136 S. Ct. at 1549 ("[T]he risk of real harm [can] satisfy the requirement of concreteness. . . . In other words, a plaintiff in such a case need not allege any additional harm beyond the one [the legislature] has identified."); id. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right."); id. at 1554 (Ginsburg, J., dissenting) ("The Court acknowledges that [the legislature] has the authority to confer rights and delineate claims for relief where none existed before."); see also id. at 1556 (finding "inaccurate representations" in violation of a statute that could affect

16

someone's "fortune in the job market" to meet the injury-in-fact requirements).[1]

The same reasoning applies here.  Like the FCRA, the New York statutes at issue

in Mr. Nicklaw's case required CitiMortgage to provide truthful information about

him to the public.  These statutes were crafted in response to a real risk of harm.

And Mr. Nicklaw has alleged that he suffered that real risk of harm as a result of

CitiMortgage's inaction that violated these statutes.  In that way he properly

alleged injury-in-fact to meet Article III standing requirements.

A.

The New York legislature identified and elevated the intangible harm

alleged by Mr. Nicklaw in this case.  The legislature made it unlawful to fail to

timely record the satisfaction of a mortgage.  N.Y. Real Prop. Law § 275(1); N.Y.

Real Prop. Acts. Law § 1921(1).  It also made those who violate this requirement

liable for damages.  Id.  It seems worth mentioning that the sponsors of these

statutes emphasized the "serious issues that can arise" when these filings are not

timely, and pointed to the difficulties that can ensue for both consumers and

---

[1] The concurrence says I cite "no decision of the Supreme Court that holds—or even hints—that a plaintiff has standing to sue because he faced a risk of harm that never materialized and has since disappeared." Conc. Op. at 3.  In saying so, the concurrence seems to demand that I present Supreme Court precedent addressing facts identical to those in Mr. Nicklaw's case.  But principles from Supreme Court precedent bind us even in cases not "on all fours."  Of course if the Supreme Court had already spoken to precisely the facts of Mr. Nicklaw's case, we would be left with nothing to write about today.  Spokeo is important here because the entire Supreme Court agreed that a statutory violation plus the risk of a concrete harm is enough to confer standing.  Our job is to apply the principles and reasoning from Spokeo to this case.  And those principles and reasoning point to Mr. Nicklaw having met the requirements of Article III.

17

financial institutions when title is mistakenly clouded. See Bellino v. JPMorgan Chase Bank, ___ F. Supp. 3d ___, 2016 WL 5173392, at *7 (S.D.N.Y. Sept. 20, 2016). These concerns resulted in the statutory scheme that provides for penalties that escalate as the unreported mortgage satisfaction persists over time. N.Y. Real Prop. Law § 275(1); N.Y. Real Prop. Acts. Law § 1921(1).

The New York legislature unambiguously created a right to have truthful information reported about the title to one's property. When a mortgage holder does not promptly report that its mortgage has been satisfied, the title to the property is clouded. Mortgages are the biggest debt many people ever take on in their lives. And several federal courts that have examined the issue have concluded that a mortgage holder who does not record the satisfaction of a mortgage can seriously impact a person's credit, as well as his ability to sell his then-unencumbered property. See Bellino, 2016 WL 5173392, at *4; Jaffe v. Bank of Am., 197 F. Supp. 3d 523, 528 (S.D.N.Y. 2016); Zink v. First Niagra Bank, ___ F. Supp. 3d ___, 2016 WL 3950957, at *5–6 (W.D.N.Y. July 1, 2016). For Mr. Nicklaw, both the history and legislative judgment support a finding that he has a concrete injury. Cf. Spokeo, 136 S. Ct. at 1549. Respect for history and the legislature, rooted in part in a concern for the separation of powers, informs my approach to this case. Legislatures are better equipped to identify intangible harms that confer Article III standing.

18

Mr. Nicklaw suffered a material risk of a concrete harm. Much like the plaintiffs in Havens Realty, Akins, and Spokeo, Mr. Nicklaw had the right to truthful information. When misinformation about his property remained of public record, he suffered a serious risk of real harm to his credit as well as the marketability of his property. This is not like the mere incorrect zip code mentioned in Spokeo. See 136 S. Ct. at 1550. Rather, mistaken information that a mortgage encumbers a property can result in a readily identifiable harm. The panel opinion points to the fact that two years before Mr. Nicklaw brought suit, his risk of harm had passed because CitiMortgage had (finally) recorded his mortgage as satisfied. See Nicklaw, 839 F.3d at 1002–03. But this misses the point. There is no requirement that Mr. Nicklaw actually suffer harm. Instead he only had to face a real risk of it. Spokeo, 136 S. Ct. at 1549; see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury" (quotation omitted) (emphasis added)).

## B.

The panel concluded that Mr. Nicklaw "allege[d] neither a harm nor a material risk of harm that the district court could remedy." Nicklaw, 839 F.3d at 1003. The panel said Mr. Nicklaw "alleg[ed] only that CitiMortgage recorded the

19

certificate late and <u>nothing else</u>." <u>Id.</u> (emphases added).  But my reading of the record paints a much different picture.

In his complaint, Mr. Nicklaw alleged he faced the harm the statute was enacted to protect against.  The Supreme Court told us in <u>Spokeo</u> that "a plaintiff in such a case need not allege any <u>additional</u> harm beyond the one [legislatively] identified." 136 S. Ct. at 1549.  As the panel put it, all Mr. Nicklaw needed to allege was "a material risk of harm that the district court could remedy." <u>Nicklaw</u>, 839 F.3d at 1003.  And he did.  Mr. Nicklaw alleged that untimely reports of satisfaction of mortgages can "disrupt the entire system for transferring residential property" and "can also frustrate landowners who need a marketable title to complete a property sale." Compl. ¶ 9.  He also alleged that the statutory time limits for recording when a mortgage has been satisfied "are crucial mechanisms by which New York State ensures that the acquisition and transfer of real property occurs with efficiency and reliability." <u>Id.</u> ¶ 3.  Then Mr. Nicklaw explained in his complaint that his fully paid-off mortgage was not properly shown to be satisfied in the public record for 106 days (nearly one-third of a year). <u>Id.</u> ¶¶ 11–16.  Thus, Mr. Nicklaw both alleged and suffered the risk of harm he identified in his complaint.  Notably, in response to CitiMortgage's motion to this Court—the first time Mr. Nicklaw's standing was questioned—he responded by again identifying and alleging this injury.  He said the relevant injury was "the deprivation of

mortgagors' rights to have the public record cleared of encumbering mortgages bearing their names in a timely manner."  And in case this wasn't clear enough, Mr. Nicklaw specifically pointed out that <u>his</u> right to a timely certificate of discharge was violated which caused a concrete injury because he had an encumbered mortgage improperly recorded in the public record.  Mr. Nicklaw argued that in light of <u>Spokeo</u>, he had Article III standing.  He also pointed to several other federal courts that reached this conclusion on identical claims.

Mr. Nicklaw, whose case is at the pleading stage, need only make "general factual allegations of injury resulting from the defendant's conduct."  <u>Lujan</u>, 504 U.S. at 561, 112 S. Ct. at 2137.  Mr. Nicklaw did this with allegations proper to meet his burden here.  He has Article III standing to bring his case before this Court and we should hear it.

IV.

Standing is, of course, fundamental to a person's ability to have federal courts look at the merits of their case.  And in cases like Mr. Nicklaw's, where the legislature has acted upon the democratic will of the people to identify a harm, class actions are often the only way to be address the harm outside of a single consumer's case.  Yet without a trace of irony, the panel quotes the late Justice Scalia to imply its decision "promotes the separation of powers by preventing overjudicialization of the process of self-governance."  <u>Nicklaw</u>, 839 F.3d at 1001

21

(quotation omitted).  There should be no mistake here in what our Court is doing. We are silencing the voice of the legislature by making it impossible to enforce a law enacted to address a harm it identified.

The Supreme Court took the first step in vindicating the point that plaintiffs like Mr. Nicklaw make with its ruling in Campbell-Ewald.  I would like to see our Court faithfully apply the Supreme Court's precedent now and allow Mr. Nicklaw's claim to be heard.  If left untouched, I am afraid the holding of the Nicklaw panel opinion might end the private vindication of many societal harms identified by legislatures.  I dissent to what this Court has done in this regard.