[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17483

Non-Argument Calendar

_____

D.C. Docket No. 3:16-cv-01289-AKK

THE FLORENCE ENDOCRINE CLINIC, PLLC,

Plaintiff-Appellant,

versus

ARRIVA MEDICAL, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 5, 2017)

Before HULL, MARCUS, and WILLIAM PRYOR, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether an order form faxed to a doctor by

a company that supplies a medical product purchased by that doctor's patient

constitutes an "unsolicited advertisement" within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(5). Arriva Medical, LLC, supplies medical products to individuals by mail. To receive an insurance reimbursement, the individual who orders a product from Arriva must obtain confirmation from the individual's doctor that the product is necessary for the individual's treatment. To facilitate this process, Arriva communicates directly with that individual's doctor to request approval for the order. So after patients of The Florence Endocrine Clinic, PLLC, ordered products from Arriva, Arriva sent faxes to the clinic requesting that physicians complete an order form. The clinic complained that the faxes were "unsolicited advertisements" sent in violation of the Telephone Consumer Protection Act, *id.* § 227(a)(5). Arriva moved to dismiss the complaint, which the district court granted. The district court ruled that the faxes were not "unsolicited advertisements." We agree. Because the faxes do not promote the sale of Arriva products, the faxes are not unsolicited advertisements, and we affirm.

## I. BACKGROUND

Arriva supplies medical products by mail to persons with diabetes and other diseases. Arriva markets its products to individuals who then buy the products from Arriva. If the individual would like his insurer to reimburse him for the product, the individual's doctor must confirm that the product is appropriate to treat the individual's medical condition.

2

After an individual orders a product, to facilitate reimbursement, Arriva requests the contact information for that individual's physician. Arriva then sends a fax to the physician explaining that a patient has ordered an Arriva product, such as a heating pad or a back brace. The fax includes an order form that the physician must complete and return to Arriva before Arriva will ship the product to the patient. Some faxes also include a product information form that describes the requested product. For example, a fax sent on behalf of a patient who requested a back brace from Arriva included a product information form that described two different back braces that the doctor could prescribe to the patient.

On four separate occasions in July 2016, The Florence Endocrine Clinic received faxes sent by Arriva to doctors working at the clinic. In August 2016, the clinic filed a complaint against Arriva that alleged that the faxes were "unsolicited advertisements" sent by Arriva in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. The Act prohibits the use of a fax machine to send an unsolicited advertisement unless the sender is in "an established business relationship with the recipient," the sender obtained the fax number from the recipient, or the advertisement contains a notice meeting the requirements of the statute. *Id.* § 227(b)(1)(C). The clinic also moved for class certification, seeking to represent a class consisting of all recipients of faxes from Arriva on or after a

3

specified date where the faxes promoted its goods or services for sale and did not contain a compliant opt out notice.

Arriva moved to dismiss the complaint on the grounds that the clinic lacked standing and that the faxes were not unsolicited advertisements. Arriva argued that the clinic lacked standing because it failed to "allege it suffered a concrete, particularized injury as a result of Arriva's purported TCPA violation." It argued that the clinic instead alleged a "bare violation of the statute, which does not satisfy Article III." Arriva argued in the alternative that the faxes it sent were not "unsolicited advertisements" because the faxes were "not directed to physicians for the purpose of marketing [Arriva] medical products" and the faxes "do not attempt to sell anything" to the clinic.

The district court granted the motion for failure to state a claim. It reasoned that the clinic had standing to bring the complaint based on our precedent in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), but that the faxes were not "unsolicited advertisements" within the meaning of the Act. The district court explained that the faxes were not advertisements because the patients of the clinic had already purchased the products described in the complaint, and nothing in the complaint "allege[d] that Arriva intended the faxes to promote the products' commercial availability to" doctors at the clinic.

4

## II. STANDARD OF REVIEW

We review the grant by a district court of a motion to dismiss *de novo*, "taking as true the facts as they are alleged in the complaint." *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that the clinic has standing based on circuit precedent. Second, we explain that the faxes sent by Arriva are not unsolicited advertisements within the meaning of the Act.

### A.  *The Clinic Suffered a Concrete Injury.*

The Constitution limits the jurisdiction of the federal courts to actual cases or controversies. U.S. Const. Art. III, § 2; *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines*, 521 U.S. at 818. The doctrine of standing, "rooted in the traditional understanding of a case or controversy, . . . developed . . . to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct

5

of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Before the district court, the parties disputed whether the clinic established that it suffered an injury in fact.

Under our precedent, the clinic suffered an injury in fact. "[W]here a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf*, 781 F.3d at 1251. The Telephone Consumer Protection Act "creates such a cognizable right." *Id.* at 1252. And, as the district court explained, in the context of the Act, the plaintiff suffers a concrete injury because the plaintiff's fax machine is occupied while the unsolicited fax is being sent and the plaintiff must shoulder the cost of printing the unsolicited fax. *See id.* at 1252–53. The clinic alleged in its complaint that it received unsolicited faxes from Arriva. *See* The Florence Endocrine Clinic Compl. 6, ECF No. 1. ("Plaintiff must leave its fax equipment on and ready to receive authorized urgent communications."). Because the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax, the clinic established that it suffered a concrete injury. *See id.* at 1252.

6

### *B. The Faxes Are not "Unsolicited Advertisements."*

The Telephone Consumer Protection Act prohibits the use of a fax machine to send an unsolicited advertisement, subject to exceptions not relevant to this appeal. 47 U.S.C. § 227(b)(1)(C). The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). Because the faxes Arriva sent to the clinic were "unsolicited," that is, sent without the "prior express invitation or permission" of the clinic, *id.* § 227(a)(5), we must determine whether the faxes were "advertisements." They were not.

To determine whether the faxes were advertisements, we must determine whether the faxes constituted "any material advertising the commercial availability or quality of any property," *id.* "Advertising" is "[t]he action of drawing the public's attention to something to promote its sale." *Advertising*, *Black's Law Dictionary* 59 (8th ed. 2004); *see also Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015) ("So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim."); *Advertise*, *Webster's New International Dictionary* 39 (2d ed. 1961) (defining advertising as "to call public attention to, esp. by emphasizing desirable qualities, in order to arouse a desire to purchase, invest, patronize, or the like");

7

*Advertise*, *Oxford English Dictionary* (online ed. 2017) (defining advertise as "to describe or present (a product, service, or the like) in order to promote sales"). To fall within the Act, the fax must draw attention to the "commercial availability or quality" of Arriva products to promote their sale.

The faxes do not promote the sale of Arriva goods because, as the district court explained, the fax only requests information to complete an order already made. Arriva sent the faxes to the physician of the patient who requested the product. Each fax included an instruction page that explained which patient requested the Arriva product and requested that the physician complete an attached order form. As the district court explained, these order forms "operate as vehicles for patients to provide Medicare with proof that they have a medical need for the product[s]" that they requested. The clinic neither alleged that Arriva intended that the faxes induce the physicians at the clinic to prescribe Arriva products to other patients that had not already requested the products from Arriva nor that the faxes request that the doctors purchase the products. To the contrary, the complaint alleges that "Arriva engages in aggressive direct marketing of its products *to patients*," not the doctors. The faxes do not "promote the sale" of any Arriva product, but instead request information from physicians in connection with orders already placed by patients of those physicians.

The decisions cited by the clinic do not persuade us otherwise. Those decisions do not involve faxes sent on behalf of a patient who already ordered a product, but instead involve transmissions that encouraged the recipient of the fax to prescribe the drug to patients or that invited the recipient to attend a program where the products or services would be promoted. *See, e.g.*, *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 489, 499 (W.D. Mich. 2015) (refusing to grant summary judgment because a question of fact existed regarding whether a fax that invited the recipient to a free seminar was an advertisement); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 282–83 (S.D.N.Y. 2013) (explaining that a fax that requested that the recipient sign up for a free television service financed by commercials played during the news program was an advertisement because, like a free seminar, it was part of an overall campaign to sell property, goods, or services); *cf. Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1378 n.11 (11th Cir. 1998) (explaining in a different context that a communication intended to encourage a doctor to prescribe a drug to a patient would qualify as advertising). The clinic cites no decision that determines that a fax requesting that a physician complete an order form at the behest of a specific patient qualifies as an "advertisement" under the Act.

9

The faxes sent by Arriva to the clinic are not "advertisements" within the meaning of the Act. Each fax relates to a specific order already placed by a patient of the clinic and requests only that the doctor of the patient fill out an order form to facilitate a purchase made by that patient. The complaint does not allege that the purpose of the faxes was to induce the clinic to purchase Arriva products, nor does it allege that the purpose of the faxes was to induce the physicians to prescribe those products to patients who had not already requested those products from Arriva. We agree with the district court that the complaint filed by the clinic fails to state a claim on which relief may be granted.

### IV. CONCLUSION

We **AFFIRM** the dismissal of the complaint.

10