[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12077
_____

D.C. Docket No. 1:15-cv-03755-MHC


SEBASTIAN CORDOBA, individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

versus

DIRECTV, LLC, individually and as successor through merger to DIRECTV, Inc.,

Defendant - Appellant,

JOHN DOE 1, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 15, 2019)

Before MARCUS and BLACK, Circuit Judges, and RESTANI,[*] Judge.

MARCUS, Circuit Judge:

The defendants in this class action have appealed from the district court's certification of a class of plaintiffs who claimed they received telemarketing calls from DIRECTV in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Congress sought to protect consumer privacy by placing limits on telemarketing calls and granting individuals who unlawfully receive calls permission to sue. At the direction of Congress, the Federal Communications Commission (FCC) promulgated a regulation requiring telemarketers to maintain lists of individuals who have asked not to receive calls from particular callers -- so-called "internal do-not-call lists."

Sebastian Cordoba alleges that DIRECTV and the company it contracted with to provide telemarketing services, Telecel Marketing Solutions, Inc., failed to maintain this list and continued to call individuals who asked not to be contacted. He claims that he was wrongfully called some eighteen times by Telecel, even though he repeatedly demanded that he not be contacted. Cordoba seeks to represent a class of all persons who received more than one telemarketing call from

---

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

2

Telecel on behalf of DIRECTV while it failed to maintain an internal do-not-call list, in violation of FCC regulations.

The district court certified the class and we granted interlocutory review under Federal Rule of Civil Procedure 23(f). We now vacate the district court's certification order. The unnamed members of the putative class who did not ask DIRECTV to stop calling them -- and thus would not have been on the internal do-not-call list, even if it had existed and had been maintained perfectly -- were not injured by the failure to comply with the regulation. That means their injuries are not fairly traceable to DIRECTV's alleged wrongful conduct, and therefore they lack Article III standing to sue DIRECTV.

This does not mean the case is nonjusticiable, because the named plaintiff -- who repeatedly asked not to be called -- has standing, and all that Article III requires for the claim to be justiciable is that a named plaintiff have standing. Cordoba has established an injury in fact, traceability, and redressability. But the fact that many, perhaps most, members of the class may lack standing is extremely important to the class certification decision. In a case like this -- where the class certification has proceeded under Rule 23(b)(3) -- the district court is required to determine whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). At some point before it may order any form of relief to the putative

3

class members, the court will have to sort out those plaintiffs who were actually

injured from those who were not.  Determining whether each class member asked

Telecel to stop calling requires an individualized inquiry, and the district court did

not consider this problem at all when it determined that issues common to the class

predominated over issues individual to each class member.  We, therefore,

conclude that the district court abused its discretion in certifying the class as it is

currently defined, vacate the class it certified, and remand for further proceedings

consistent with this opinion.

## I.

The Telephone Consumer Protection Act was enacted in 1991 because, as

Congress put it, "[m]any consumers [were] outraged over the proliferation of

intrusive, nuisance [telemarketing] calls to their homes."  Mims v. Arrow Fin.

Servs., LLC, 565 U.S. 368, 372 (2012) (quoting the Telephone Consumer

Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394).  In

particular, Congress noted that "[a]utomated or prerecorded telephone calls made

to private residences . . . were rightly regarded by recipients as 'an invasion of

privacy.'"  Id.  (quotation omitted).

"Subject to exceptions not pertinent here, the TCPA principally outlaws four

practices.  First, the Act makes it unlawful to use an automatic telephone dialing

system or an artificial or prerecorded voice message, without the prior express

4

consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call. See 47 U.S.C. § 227(b)(1)(A). Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D)." Id. at 373.

The TCPA also authorized the FCC to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The FCC was instructed by Congress to consider various approaches, "including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific 'do not call' systems, and any other alternatives." Id. § 227(c)(1)(A). The FCC promulgated regulations creating a national do-not-call list and requiring telemarketers to maintain their own internal do-not-call lists. Both of these provisions are involved in this case. The National Do Not Call Registry is maintained by the federal government, and telemarketers are prohibited from soliciting residential telephone subscribers who have registered their numbers on the list. 47 C.F.R. § 64.1200(c)(2). Telemarketers can avoid

liability for any violation if they can show that the violation was a mistake and that they meet minimum compliance standards. Id. § 64.1200(c)(2)(i).

Internal do-not-call lists are created and maintained by companies engaged in telemarketing. The main FCC regulation at issue today provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber" without "institut[ing] procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." Id. § 64.1200(d) (emphasis added). The FCC requires that telemarketers have a written policy for maintaining an internal do-not-call list, train their personnel on its "existence and use," put people on the list when they ask, and refrain from calling individuals on the list for five years after a request is made. See id. The TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of these regulations, and plaintiffs can recover $500 in statutory damages for each violation. See 47 U.S.C. § 227(c)(5). The statute provides an affirmative defense for defendants who "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations," but it also makes available treble damages against a defendant who "willfully or knowingly violated the regulations." Id. "[U]nder federal

6

common-law principles of agency, there is vicarious liability for TCPA violations." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 674 (2016).

Cordoba complains that DIRECTV hired Telecel Marketing Solutions, Inc., sometime around 2003 to market its goods and services via telephone. Between March 27, 2015, and March 3, 2016, Telecel placed over 60,000 marketing calls on DIRECTV's behalf to 24,566 unique telephone numbers. Cordoba personally began receiving unsolicited calls from DIRECTV in July 2014. According to the complaint, he was called at least eighteen times between April and November of 2015, even though his number appeared on the National Do Not Call Registry and even though he repeatedly told Telecel that he did not want to be called. The owner of Telecel admitted that the company did not maintain an internal do-not-call list (plainly a violation of FCC regulation), and said that its practice was to simply delete individuals' contact information from its database if they asked not to be called. Cordoba says that he went so far as to write to DIRECTV and request that they cease calling him. DIRECTV responded and promised that they would no longer contact him, but still the calls continued.

Cordoba commenced this class action lawsuit in the United States District Court for the Northern District of Georgia, alleging that DIRECTV and Telecel have violated several aspects of the TCPA's regulatory scheme. He sought to represent two classes. The first class -- and the one at issue today in this

7

interlocutory appeal -- was defined as including "all individuals who received more than one telemarketing call from Telecel on behalf of DIRECTV on or after October 27, 2011," during which time Telecel failed to adhere to the internal do-not-call list regulations set out in 47 C.F.R. §§ 64.1200(d)(1)–(6).  Based on call data produced during discovery, Cordoba said this class includes at least "16,870 individuals who received a total of 52,810 calls."  The second class -- which is not involved in this appeal -- was defined as all individuals whose telephone numbers were on the National Do Not Call Registry but nevertheless received more than one DIRECTV marketing call from Telecel on or after October 27, 2011.  This class consisted of 926 individuals who received a total of 2,829 calls.

The district court certified both classes.  First, the court held that the members of both classes had standing because an unsolicited phone call is an injury in fact and that the proposed classes were ascertainable.  The court then determined that each of the requirements of Rule 23(a) -- numerosity of parties, commonality of issues, typicality of the class representative's claims, and adequacy of representation -- was satisfied.  Since Cordoba's claim was for money damages, the court moved on to Rule 23(b)(3), which further requires that common questions "predominate over any questions affecting only individual members" and that a class action be "superior" to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  The trial court determined that any individual issues would be "amenable

8

to resolution by fairly 'simple and objectively verifiable means,'" and that class litigation was superior due to the relatively small amount of damages available in an individual TCPA action.

DIRECTV then sought relief in this Court, filing a petition pursuant to Rule 23(f), seeking permission to appeal on an interlocutory basis from the district court's order certifying the classes. See Fed. R. Civ. P. 23(f) ("A court of appeals may permit an appeal from an order granting or denying class-action certification . . . ."); see also Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1274–76 (11th Cir. 2000) (setting out guideposts for determining whether a 23(f) petition ought to be granted). DIRECTV's petition asked for review of two questions, but we granted permission to appeal on only one of them.[1] That question, which we now address, is "[w]hether a recipient of a telemarketing call who did not request to be placed on the caller's internal DNC [do-not-call] list has standing under Article III to maintain a claim that the caller failed to institute appropriate internal DNC list procedures."

## II.

Rule 23(f) limits our review to the district court's order granting or denying class certification. We review the class certification order for abuse of discretion.

---

[1] The other question was "[w]hether, to find the predominance and ascertainability criteria for class certification satisfied, the district court improperly created a new legal rule requiring DIRECTV to prove that calls were not made for telemarketing purposes."

Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1264 (11th Cir. 2009).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  Id. (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004), abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)).  And we review issues of fact for clear error and issues of law de novo.  Id.

For a class to be certified, the named plaintiff must have standing and the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a)[2] and the requirements found in one of the subsections of Rule 23(b).[3]  City of Hialeah v. Rojas, 311 F.3d 1096, 1101 (11th Cir. 2002).  The

---

[2] Rule 23(a) reads:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

[3] Rule 23(b) reads:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

district court certified this class under Rule 23(b)(3), which permits class certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A.

We start with the question on which we granted review, whether the members of the internal do-not-call list class who did not ask to be put on the internal do-not-call list have standing. Article III extends "'[t]he judicial power of the United States' . . . only to 'Cases' and 'Controversies.'" Spokeo, Inc. v.

---

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

11

Robins, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. art. III, §§ 1–2). Standing doctrine is "rooted in the traditional understanding of a case or controversy" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong"; it "'serves to prevent the judicial process from being used to usurp the powers of the political branches' and confines the federal courts to a properly judicial role."  Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)) (citations omitted).  The three requirements for Article III standing are familiar:  the plaintiff must allege that he suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; that injury must be "fairly traceable to the challenged action of the defendant"; and it must be "likely . . . that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (quotation omitted and alterations adopted).  The plaintiff bears the burden of establishing each element. Id.  DIRECTV claims that the unnamed class members who did not ask Telecel to stop calling cannot satisfy either of the first two prongs of the analysis -- injury in fact or traceability.

DIRECTV first says that the absent class members lack standing because they have not suffered an injury in fact under Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016).  In Spokeo, the Supreme Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation."  Id. at 1549.

12

In other words, plaintiffs do not "automatically satisf[y] the injury-in-fact requirement whenever a statute" grants them the right to sue; they still must allege a "concrete" harm that is more than a "bare procedural violation." Id. To be concrete, an injury "must be 'de facto'; that is, it must actually exist," and it must be "'real,' and not 'abstract.'" Id. at 1548.

The Court explained that although Congress's decision to grant a right to sue is not determinative of Article III standing, "its judgment is also instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id. at 1549. When Congress grants a procedural right, the violation of that right can be a concrete injury, and a plaintiff "need not allege any additional harm beyond the one Congress has identified." Id. As an example, the Court pointed to Federal Election Commission v. Akins, 524 U.S. 11, 20–25 (1998), where it had held that a group of voters had standing to sue when they were unable to obtain information that Congress had required be made public. See Spokeo, 136 S. Ct. at 1549. In brief, Spokeo set forth two rules of law: Congress cannot grant a plaintiff who has not suffered a concrete injury the right to sue in federal court, but Congress has a "role in identifying and elevating intangible harms" to the level of concrete Article III injuries in fact. Id.

Not long after Spokeo, this Court decided Nicklaw v. CitiMortgage, Inc., 839 F.3d 998 (11th Cir. 2016). Nicklaw had sold real estate in New York and used

13

the proceeds to satisfy the balance on a mortgage owned by CitiMortgage.  Under

New York law, Citi had 30 days to file a certificate of discharge with the county

clerk to record the satisfaction of the mortgage.  Id. at 1000 (citing N.Y. Real Prop.

Law § 275; N.Y. Real Prop. Acts. Law  § 1921).  If Citi didn't do this within 30

days, it would be liable to Nicklaw for $500, then $1,000 after 60 days, and $1,500

after 90.  Citi ended up making the recording over 90 days after the satisfaction of

the mortgage.  Id. at 1001.  Nicklaw filed a class action, which ended up in the

Southern District of Florida.  Id. at 1000–01.  On appeal, we asked whether

Nicklaw, the named plaintiff, had standing to sue over the delayed filing.  See id.

       To determine "whether the intangible harm caused by the delay in recording

the certificate of discharge constitutes a concrete injury in fact," we turned to

Spokeo.  Id. at 1002.  We concluded that Nicklaw sustained neither "harm nor a

material risk of harm that the district court could remedy" because he did not lose

any money, his credit did not suffer, and no one was even aware of the delayed

filing until after the recording had been made.  See id. at 1003.  New York could

identify this injury as sufficient for standing in its own courts, but Nicklaw had

sued in federal court and his claimed injury did not meet the requirements of

Article III.  Id.  Addressing the denial of rehearing en banc, Judge William Pryor

further explained that this case was different from the informational injury

sustained in Akins, because a violation of the New York statute did not prevent

14

Nicklaw from obtaining any information about the satisfaction of his mortgage. Nicklaw v. CitiMortgage, 855 F.3d 1265, 1268 (11th Cir. 2017). "[T]he violation of a legal right alone does not satisfy the concrete injury requirement." Id. Nicklaw suffered no harm and had no risk of future harm, so he lacked an injury in fact.

A panel of this Court recently applied Spokeo in Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC, 858 F.3d 1362 (11th Cir. 2017). There, we held that a plaintiff had standing to sue after receiving certain faxes sent in violation of the Telephone Consumer Protection Act. The defendant, Arriva Medical, allegedly sent advertisements by fax in violation of the TCPA's prohibition on "the use of a fax machine to send an unsolicited advertisement unless the sender is in 'an established business relationship with the recipient,' the sender obtained the fax number from the recipient, or the advertisement contains a notice meeting the requirements of the statute." Id. at 1365 (quoting 47 U.S.C. § 227(b)(1)(C)). An earlier case in our Court, Palm Beach Golf Center–Boca v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245 (11th Cir. 2015), had held that the receipt of a fax violating this rule was enough to establish standing. Id. at 1252–53. In Florence Endocrine we cited Spokeo and applied Palm Beach Golf, finding that Spokeo had not abrogated this precedent. See Florence Endocrine, 858 F.3d at 1366. We explained that a plaintiff who receives an unwanted fax "suffers a concrete injury

15

because the plaintiff's fax machine is occupied while the unsolicited fax is being sent and the plaintiff must shoulder the cost of printing the unsolicited fax." Id. That "concrete injury" is all that Spokeo required, so the recipient of the fax had standing to sue.

These cases strongly suggest that the receipt of more than one unwanted phone call is enough to establish injury in fact. As we see it, a phone call is not much different from a fax -- "[e]very call uses some of the phone owner's time and mental energy, both of which are precious." Patriotic Veterans, Inc. v. Zoeller, 845 F.3d 303, 305–06 (7th Cir. 2017). Indeed, a phone call is in some ways more intrusive than a fax, since a ringing phone requires immediate attention, and although the recipient of a phone call is not required to bear any printing costs, he may also bear the cost of telephone minutes. This is unlike the injury alleged in Nicklaw, because the receipt of an unsolicited phone call is an injury that the district court can remedy. And we know that Congress focused on precisely this kind of harm when it passed the TCPA, finding that "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102–243, § 2, 105 Stat. 2394, 2394. Congress identified telemarketing as a potentially "intrusive invasion of privacy," suggesting to us that Congress considered the receipt of an unwanted telemarketing call to be a real injury. Id.

16

For these reasons, the Third Circuit held, after Spokeo was decided, that the receipt of a single unsolicited call to a cell phone and a voicemail recording constituted an injury in fact. Susinno v. Work Out World Inc., 862 F.3d 346, 351–52 (3d Cir. 2017). There, the court explained that "Congress squarely identified this injury" in the TCPA and that this harm bore a close relationship to the kind of harm that would have given rise to the common law cause of action of "intrusion upon seclusion." Id. at 351; see also Perry v. Cable News Network, Inc., 854 F.3d 1336, 1340 (11th Cir. 2017) (holding that a plaintiff had standing to sue for a violation of the Video Privacy Protection Act, which Congress enacted "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes" (quotation omitted)). We agree. The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing.

This Court's recent decision in Salcedo v. Hanna, 936 F.3d 1162 (11th Cir. 2019), that the receipt of a single unsolicited text message does not qualify as an injury in fact does not change our analysis. In Salcedo, we focused heavily on the unique features of text messages. Receiving a text message does not occupy the device for any period of time, unlike a fax or a phone call, and it does not create the same intrusion into the privacy of the home like an unwanted residential phone call. Id. at 1169–70. In fact, our Court expressly distinguished receiving a text

17

message from receiving an unwanted phone call, observing that the plaintiff in Salcedo "ha[d] not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone. . . . [His] allegations of a brief, inconsequential annoyance are categorically distinct . . . ." Id. at 1172.  Compared to a phone's ring, "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face."  Id.  As we recognized in Salcedo, a phone call intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention.  While those injuries might not be significant in the grand scheme of things, they are sufficiently concrete and particularized for Article III standing. This is enough to establish the injury in fact prong of standing for Cordoba and all of the absent class members who received calls from Telecel.

DIRECTV's second argument -- that class members who did not ask Telecel to stop calling fail to meet Lujan's traceability requirement -- is more persuasive. Article III standing requires a "causal connection between the injury and the conduct complained of" -- in other words, the injury must be "fairly traceable to the challenged action of the defendant."  Lujan, 504 U.S. at 560 (quotation omitted and alterations adopted).  As the Court explained in Simon v. East Kentucky Welfare Rights Organization, 426 U.S. 26 (1976), "plaintiffs must allege some

18

threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction," because Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Id. at 41–42 (quotation omitted); see also Allen v. Wright, 468 U.S. 737, 753 n.19 (1984), abrogated in part on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) (holding that parents lacked standing to sue the IRS for their children's diminished ability to receive an education in a racially integrated school because, even though this was a cognizable injury, "whatever deficiencies exist in the opportunities for desegregated education for [plaintiffs'] children might not be traceable to IRS violations of law").

Following Lujan, we've said that "an injury is not fairly traceable to the actions of a defendant if caused by the 'independent action of some third party not before the court' and likewise a controversy is not justiciable when a plaintiff independently caused his own injury." Swann v. Secretary, 668 F.3d 1285, 1288 (11th Cir. 2012) (quoting Lujan, 504 U.S. at 560). We've made it clear that the traceability requirement is less stringent than proximate cause: "[e]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." Resnick v. AvMed, Inc., 693 F.3d 1317, 1324 (11th

19

Cir. 2012). Thus, "for standing purposes [a plaintiff] is not required to prove causation beyond a reasonable doubt or by clear and convincing evidence." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1273 (11th Cir. 2003) (emphasis omitted).

Cordoba, as the named plaintiff, has no problem meeting the traceability requirement: the complaint squarely alleges that he repeatedly asked Telecel and DIRECTV to stop calling him, Telecel didn't keep a list of all those who asked not to receive calls, and he later suffered the injury of receiving many phone calls, which would not have happened if Telecel had maintained an internal do-not-call list and abided by it. Similarly, this is not a problem for the class based on calls made to individuals on the National Do Not Call Registry, since those whose numbers are on the Registry and nevertheless received marketing calls suffered an injury that is traceable to Telecel's misconduct -- if Telecel had followed the law and not called numbers on the Registry, they would not have been injured.

But if an individual not on the National Do Not Call Registry was called by Telecel and never asked Telecel not to call them again, it doesn't make any difference that Telecel hadn't maintained an internal do-not-call list. Telecel could and would have continued to call them even if it had meticulously followed the TCPA and the FCC regulations. For these individuals, then, their injury wouldn't be "fairly traceable to the challenged action of the defendant.'" Lujan, 504 U.S. at

20

560 (quoting Simon, 426 U.S. at 41) (emphasis added and alterations adopted). There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who never said to Telecel they didn't want to be called again. These plaintiffs therefore would lack Article III standing to sue.

Our decision in Swann v. Secretary, 668 F.3d 1285 (11th Cir. 2012), is instructive. There, an inmate in a Georgia county jail sued after he failed to receive an absentee ballot. Id. at 1287. He claimed that a Georgia statute requiring that absentee ballots be sent to the address listed in the voter registry as the voter's permanent mailing address was unconstitutional. Id.; see Ga. Code Ann. § 21-2-381(a)(1)(D). But we held that Swann lacked standing to bring this claim, because he never asked for the absentee ballot to be sent to the jail -- on the absentee ballot application, he listed his permanent address as his "Address as Registered," and left the space for his "Address (Ballot to be mailed)" blank. Id. Because his "failure to provide the address of the jail on his application independently caused his alleged injury," his claimed injury was not traceable to the defendants' challenged actions. Id. at 1289. Swann would have been injured in precisely the same way even if the state officials had not engaged in the conduct that he claimed was unlawful, just like the absent class members here who did not ask Telecel to stop calling them. Simply put, "a plaintiff lacks standing to challenge a rule if an

21

independent source would have caused him to suffer the same injury." Id. at 1288.

Under that principle, the absent class members who did not call Telecel would not

have been on the internal do-not-call list and therefore would lack standing

because of the failure to trace the injury to the unlawful conduct.

Cordoba attempts to salvage the standing of the class members who did not

ask Telecel not to call them, arguing that DIRECTV injured them while engaging

in a program of "unrestricted telemarketing," which is the exact harm the TCPA

was expressly intended to prevent.  But this gets them no closer.  If the injury

asserted by unnamed putative class members is just that DIRECTV violated

regulations under the TCPA by engaging in telemarketing without maintaining an

internal do-not-call list, that claim runs smack into the Spokeo problem of asserting

a "bare procedural harm" untethered to a concrete and particularized injury in fact.

And if the "unrestricted telemarketing" argument depends on their injury in fact of

receiving unwanted phone calls, it fails for the reason we've already discussed:  the

receipt of a call is not traceable to Telecel's failure to comply with the internal do-

not-call list regulations if the recipient wouldn't have been on the list in the first

place even if it had been maintained.  In short, the allegation that the absent class

members were injured while DIRECTV engaged in an "unrestricted telemarketing"

campaign does not add anything to the argument -- Lujan requires that the

plaintiffs allege a concrete and particularized injury in fact that is fairly traceable to

the defendant's wrongful conduct.  The class members who did not ask Telecel to stop calling them cannot do so.

## B.

Having concluded that members of the class who did not ask DIRECTV to stop calling them would lack standing, the more difficult question is what part this plays in the class certification analysis, and particularly how it may affect the Rule 23(b)(3) predominance inquiry.  For starters, we agree with Cordoba that, for a class action to be justiciable, "all that the law requires" is that a named plaintiff have standing.  In constitutional terms, "[t]hat a suit may be a class action . . . adds nothing to the question of standing"; named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." Spokeo, 136 S. Ct. at 1547 n.6 (quoting Simon, 426 U.S. at 40 n.20).  This Court also has held that no more is required at the class certification stage.  See Prado-Steiman, 221 F.3d at 1279 ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." (emphasis added)); see also 1 William B. Rubenstein, Newberg on Class Actions § 2:3 (5th ed. 2016) ("[T]he vast majority of courts continue to heed the basic rule that the standing inquiry

focuses on the class representatives, not the absent class members."). So if DIRECTV's argument depended on the proposition that all class members must prove their standing before a class could be certified, that argument would be wrong. The named plaintiff has said enough in the complaint to establish injury in fact, traceability, and redressability.

But on the other hand, our case law does not suggest that the absent class members' standing is entirely irrelevant. In some cases, whether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by Federal Rule of Civil Procedure 23. See Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1358 (11th Cir. 2009); see also 1 Rubenstein, supra, § 2:3 ("Most courts concerned about the standing of absent class members are in fact concerned about whether the class is properly defined . . . . In this sense, the problem of un-injured absent class members is a problem of Rule 23, not of Article III."). The problem here, then, is not that this claim is not justiciable -- plainly it is -- but rather that many claims of the absent class members may not be. Among the factors that we have directed district courts to consider before certifying a class are "how the class will prove causation and injury and whether those elements will be subject to class-wide proof," since "[t]he issue of liability . . . includes not only the question of violation, but also the question of fact of injury." Williams, 568 F.3d at 1358 (quoting Alabama v. Blue Bird Body Co.,

24

573 F.2d 309, 320 (5th Cir. 1978)); see also Klay, 382 F.3d at 1254 ("[W]e must take into account 'the claims, defenses, relevant facts, and applicable substantive law,' to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996))); Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235–36 (11th Cir. 2000) ("[S]erious drawbacks to the maintenance of a class action are presented where initial determinations . . . turn upon highly individualized facts." (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984))).  If many or most of the putative class members could not show that they suffered an injury fairly traceable to the defendant's misconduct, then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether and how to certify a class.

In this case, unnamed class members' standing poses a powerful problem under Rule 23(b)(3)'s predominance factor.[4]  We have said that "[c]ommon issues

---

[4] Although appellant DIRECTV did not frame the issue precisely in this manner, we are satisfied that it adequately preserved the issue and presented it on appeal.  In its brief opposing class certification in the district court, DIRECTV argued that the predominance requirement was not satisfied because "the question of whether a particular person was harmed by Telecel's alleged procedural violation of the [internal do-not-call list] regulations, and hence has standing to complain of that alleged violation, would necessarily require individualized proof."  And in their opening brief in this Court, DIRECTV argued that "only individuals who asked not to be called suffered an actual injury from Telecel's failure to maintain an internal DNC list," and that this "individualized issue would make certification impermissible under Rule 23(b)(3)'s

25

of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's . . . entitlement to injunctive and monetary relief," but "common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 985 (11th Cir. 2016) (quoting Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009)). Moreover, "[t]he Rule requires a pragmatic assessment of the entire action and all the issues involved." Williams, 568 F.3d at 1357 (quoting 5 James Wm. Moore et al., Moore's Federal Practice § 23.45[1], at 23–217 (3d ed. 2008)). Determining which type of question predominates requires "more of a qualitative than quantitative analysis." 2 Rubenstein, supra, § 4:50 (citing, among other cases, Buford v. H & R Block, Inc., 168 F.R.D. 340, 356 (S.D. Ga. 1996), aff'd, 117 F.3d 1433 (11th Cir. 1997) (table)).

This problem will necessarily arise here because at some point before it can award any relief, the district court will have to determine whether each member of the class has standing. As Chief Justice Roberts explained, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action

---

predominance requirement." It may not have been their primary argument, but the issue was squarely presented to both the district court and this Court on appeal.

or not.  The Judiciary's role is limited 'to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm.'"  Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring) (quoting Lewis v. Casey, 518 U.S. 343, 349 (1996)).  That is not to say that a class action cannot move forward if there are some uninjured members in the class as it is currently defined.  Indeed, in Tyson Foods the Chief Justice joined the majority in affirming the denial of a motion for decertification, even though "it [was] undisputed that hundreds of class members suffered no injury in [that] case."  Id. at 1051.

The essential point, however, is that at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief.  That is an individualized issue, and it is one that the district court did not account for or consider in any way in deciding whether issues common to the class actually predominated over issues that were individualized to each class member.  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  Tyson Foods, Inc., 136 S. Ct. at 1045 (quoting 2 Rubenstein, supra, § 4:50).  It appears to

27

us that each plaintiff will likely have to provide some individualized proof that they have standing -- i.e., each plaintiff will have to provide some evidence that he or she called Telecel or otherwise communicated that they did not wish to be called, and that their injury is therefore traceable to Telecel's violation of the law. When this standing question is added to the mix, individualized questions may predominate over common issues susceptible to class-wide proof. There is no indication, however, that the district court considered this real-world problem at all; rather, it certified a class defined as all individuals who received multiple calls during the relevant time period, regardless of whether they ever asked to no longer be called by Telecel.

The record on appeal is sorely lacking in information about two key questions: First, how many class members (or what proportion of them) asked Telecel not to call them anymore, like Cordoba did? The record does not reveal the answer, and counsel for neither party could provide an answer at oral argument.[5] See Oral Argument at 13:30 (DIRECTV); id. at 36:10 (Cordoba). And second, how do class members intend to prove that they made these requests? If most class members made these requests, or if there is a plausible straightforward

_____

[5] The number might be quite small. Cordoba alleges in his complaint that Telecel called 16,870 unique phone numbers more than once from March 27, 2015, to March 3, 2016 -- the individuals with these numbers make up the internal do-not-call list, as the district court certified it. Only 926 of those phone numbers -- 5.5 percent -- were listed on the National Do Not Call registry. If a similar number of individuals asked Telecel not to call them, then the class members who have standing are vastly outnumbered by those who do not.

method to sort them out at the back end of the case, then the class might appropriately proceed as it is currently defined. If, however, few made these requests, or if it will be extraordinarily difficult to identify those who did, then the class would be overbroad and these individualized determinations might overwhelm issues common to the class. We don't know enough to say one way or the other on either point.

The Seventh Circuit faced similar problems in Kohen v. Pacific Investment Management Co. LLC, 571 F.3d 672 (7th Cir. 2009), a class action case filed under the Commodity Exchange Act, 7 U.S.C. § 25(a). There, the plaintiffs were short sellers who alleged that the defendants had cornered the market in futures on 10-year Treasury notes and unlawfully driven up the price. The class was defined by the district court as all traders who bought futures contracts to close out their short positions during the particular time frame in which the defendants had allegedly manipulated the price. Id. at 676. The defendants objected to that definition, arguing that the class certified was defined in a way that was overbroad because it included some who had not suffered a net loss because they made more money from offsetting long positions than they had lost on their shorts. Id.

The court rejected the argument for reasons that illuminate the problem with the class definition here. First, it accepted that for Article III purposes only one plaintiff -- before class certification, the named plaintiff -- must have standing for

29

the case to be justiciable.  Id.  Then, the court pointed out that a properly defined class "will often" include uninjured class members, and that is not a problem that precludes class certification.  Id. at 677.  After all, the members of the class might not be fully known, or some of the facts bearing on their claims might be unknown.  Or, for instance, a class in a products liability case could be defined to include everyone who purchased a defective product, even if every single unit might not have the defect.  See 1 Rubenstein, supra, § 2:3.  But crucially, the Seventh Circuit recognized that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." Kohen, 571 F.3d at 677 (emphasis added); see also In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 28 (1st Cir. 2008) ("[T]he district court would need enough information to evaluate preliminarily whether the proposed model will be able to establish, without need for individual determinations for the many millions of potential class members, which consumers were impacted . . . and which were not."); Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006) (affirming the denial of class certification when "[c]ountless members of [the] putative class could not show any damage" resulting from the defendant's actions).  Indeed, if a class is "overbroad" in this way, there is a "compelling reason" to redefine it more narrowly.  Kohen, 571 F.3d at 678.  Given the "in terrorem character of a class action," id., a class defined so as to improperly

30

include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits.

Here, it seems likely that the class definition is overbroad, and the district court's order did not consider this in any way. It only analyzed injury in fact under Spokeo; it did not address at all the "fairly traceable" requirement of Article III standing, other than having made two fleeting references. When it discussed Rule 23(b)(3), the district court considered whether putative class members could be sorted out for other reasons -- for example, because the number called by Telecel belonged to a business subscriber, not a residential one -- but it did not did not say anything about the standing problem that arguably affected the bulk of the unnamed members of the class it had drawn. That oversight was an abuse of discretion. See Vega, 564 F.3d at 1264 ("A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or . . . appl[ies] the law in an unreasonable or incorrect manner." (quoting Klay, 382 F.3d at 1251)).

Inasmuch as the district court did not address the significant individualized standing question when it certified the class under Rule 23(b)(3), we vacate the certification of the internal do-not-call list class and remand for further consideration. We hold today only (1) that calls placed in violation of the Telephone Consumer Protection Act are injuries in fact under the framework

31

explicated by the Supreme Court in <u>Lujan</u> and <u>Spokeo</u> and our own case law, but (2) that recipients of such calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list.

In a general sense, then, the basic question we face is whether a district court should sort out the uninjured class members <u>before</u> granting class certification, or whether it can wait until a later stage in the proceeding to determine which class members have suffered a redressable injury and are entitled to relief and which are not. We do not hold today that a court is required to ensure that the class definition does not include <u>any</u> individuals who do not have standing before certifying a class. Such a rule would run the risk of promoting so-called "fail-safe" classes, whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury. <u>See</u> 1 Rubenstein, <u>supra</u>, § 2:3. Rather, we only hold that in this case the district court must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing, as it seems at first blush here,

32

and making that determination for these members of the class will require individualized inquiries.

Our decision does not mean that a substantially similar class cannot be drawn or certified, or that no class action premised on a failure to maintain an internal do-not-call list could succeed, or even that the class as certified by district court was necessarily too broad.  A plaintiff need not prove that every member of the proposed class has Article III standing prior to certification, and in some cases a court might reasonably certify a class that includes some putative members who might not have satisfied the requirements of Lujan and decide to deal with the problem later on in the proceeding, but before it awarded any relief.  But there is a meaningful difference between a class with a few members who might not have suffered an injury traceable to the defendants and a class with potentially many more, even a majority, who do not have Article III standing.

The record does not reveal much about the makeup of the internal do-not-call list class.  It does not give us any indication of how many members of the class would have been on the internal do-not-call list if it had existed, and thus it does not tell us how many members of the putative class have standing to sue.  It is possible that the certified class "contains a great many persons" who lack standing to sue DIRECTV, see Kohen, 571 F.3d at 677; it is also possible that many members of the class did, in fact, ask Telecel to stop calling them and thus would

33

have been on the internal do-not-call list if Telecel and DIRECTV had followed their regulatory obligations.  That is not a determination we can make in the first instance on this limited record.  What we can and do say is that the district court abused its considerable discretion in not considering this basic problem at all when it set about the task of determining whether the named plaintiff could circumnavigate the essential requirement of Rule 23(b)(3) that common issues must predominate over issues individualized to each class member.  On remand, the district court will be in a better position to answer these questions and, ultimately, to address whether common issues predominate under Rule 23(b)(3) when this issue is baked into the analysis.  Accordingly, we vacate the class certified by the district court and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

34