[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-13929
Non-Argument Calendar

————————————————

D.C. Docket No. 1:15-cr-00458-LMM-AJB-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK MORROW,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(June 4, 2021)

Before WILSON, ROSENBAUM, and BRASHER, Circuit Judges.

PER CURIAM:

Mark Morrow appeals the district court's order denying his motion for compassionate relief under 18 U.S.C. § 3583(c)(1)(A). Morrow argues that the

district court abused its discretion in denying his motion, contending that the district court relied on two clearly erroneous factual findings. First, he argues that the district court improperly calculated the length of his remaining sentence. Second, he argues that the district court incorrectly stated that his crime had over 300 victims with financial losses of approximately $28 million. After careful review, we conclude that those findings were not clearly erroneous and that the district court did not otherwise abuse its discretion in denying relief. Accordingly, we affirm.

## I.

Mark Morrow and his co-defendant were charged with two counts of conspiracy to commit mail and wire fraud, fourteen counts pertaining to specific instances of mail or wire fraud, and one count of conspiracy to commit money laundering. In all, their fraudulent conspiracy caused the loss of over $30 million dollars amongst over 300 victims. Morrow ultimately pleaded guilty to one count of conspiracy to commit wire fraud, which charged him with knowingly and intentionally devising a scheme to defraud note holders and equity investors in Detroit Medical Partner, LLC. This count outlined losses of over $28 million. Although only pleading guilty to that one count, his written plea explicitly stated

that the court could consider the conduct underlying the dismissed counts at sentencing.

At sentencing, the district judge adopted the factual findings in the presentence investigation report ("PSR"). The guidelines range was between 121 and 151 months. The government requested a downward variance to 96 months to avoid sentencing disparities with his co-defendant. Defense counsel argued for a variance all the way down to thirty months. The court granted the motion for a downward variance and sentenced Morrow to 66 months imprisonment, to be followed by a three-year term of supervised release. In addition, the court required Morrow to pay $7 million dollars in restitution to 175 victims, jointly and severally with his co-defendant. His co-defendant, on the other hand, was sentenced to 96 months and directed to pay $24 million in restitution to 336 victims.

In delivering this sentence, the district judge discussed several Section 3553(a) factors. Specifically, the judge rejected the defendant's 30-month sentence request due to the substantial monetary loss and number of victims. Additionally, the judge noted that Morrow did not appreciate the full extent of his guilt and had ample opportunity to disengage during the scheme but failed to do so. The judge did however decide to vary downward because Morrow was less culpable than his co-defendant, he was not primarily motivated by greed, and he had made some attempt to return losses to the investors. The judge also considered personal characteristics

3

of Morrow, including that he had no criminal history, was heavily involved in the community, and was not likely to be a recidivist. The judge stated that she had considered all Section 3553(a) factors in determining that a 66-month sentence was sufficient but not greater than necessary.

After serving 30 months of his sentence, Morrow submitted a *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). This motion was later supplemented by counsel. In this motion, Morrow asserted that there was an extraordinary and compelling reason for his early release in light of the COVID-19 pandemic. He argued that he was at increased risk for serious illness from COVID-19 due to his underlying conditions, including poorly controlled diabetes, Charcot-Marie Tooth disorder, and a history of MRSA infection. In support, defendant cited cases from various jurisdictions, as well as a variety of health authorities.

The same district judge who sentenced Morrow denied this motion. The district court made clear that, even assuming that Morrow's medical conditions were extraordinary and compelling, relief was not warranted based on the Section 3553(a) factors. The district court succinctly explained:

> Here, Defendant engaged in a serious fraudulent investment scheme, which, along with his co-defendant, caused over 300 victims to suffer losses of approximately $28 million dollars. Further, at this time, Defendant has served less than half of his 66-months sentence, which the Court imposed after granting a substantial downward variance at sentencing. Given these circumstances, the Court finds that reducing Defendant's sentence by 36 months "would not be consistent with the statutory purposes of sentencing under § 3553(a)."

Morrow timely appealed, arguing that the district court relied on clearly erroneous factual findings.

## II.

This Court reviews for abuse of discretion the denial of an eligible prisoner's request for a reduced sentence under Section 3582(c)(1)(A). *United States v. Jones*, 929 F.3d 1290, 1296 (11th Cir. 2020). When reviewing for abuse of discretion, we cannot reverse just because we may have arrived at a different conclusion. *See Sloss Indus. Corp. v. Eurisol,* 488 F.3d 922, 934 (11th Cir. 2007). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Robinson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (internal citation and quotation marks omitted).

## III.

Under 18 U.S.C. § 3582, a district court can reduce a prisoner's sentence for "extraordinary and compelling reasons" if it finds that such a reduction is warranted after considering the Section 3553(a) factors. Here, the district court denied Morrow's motion based on the Section 3553(a) factors. Under the district court's

5

view, relief was not warranted because of the serious nature and magnitude of Morrow's crime, the proportion of the sentence yet to be served, and the substantial downward variance granted at the original sentencing. Morrow argues that the factual findings undergirding the first two considerations were clearly erroneous. We address each in turn.

We turn first to the district court's consideration of the length of the sentence yet to be served. The district court stated that Morrow had served less than half of his sentence. In doing so, the court noted that Morrow had served 30 months of a 66-month sentence. Morrow argues that this was clearly erroneous as he had been awarded ten months of good-time credit. He contends that he has therefore served 30 months of what will ultimately be 56 months in prison. In turn, the government argues that the "sentence" is the term of imprisonment imposed at sentencing, and so the amount of good-time credit is irrelevant to its calculation. It thus concludes that the district court did not err, clearly or otherwise, in its "calculation or recitation of the remaining portion of Morrow's sentence."

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). However, under 18 U.S.C. § 3624, the Bureau of Prisons has discretion to credit an inmate for good

6

time, allowing an inmate to be released prior to the end of his sentence. Good-time credit does not vest until the inmate is released from custody, 18 U.S.C. § 3624(b)(2).

Morrow received a valid sentence of 66-months. Sentence length and time served are not synonymous. *See Barber v. Thomas*, 560 U.S. 474, 483–87 (2010). Good-time credit does not reduce the length of the sentence imposed. *Pepper v. United States*, 562 U.S. 476, 501 n.14 (2011) ("An award of good time credit by the Bureau of Prisons does not affect the length of a court-imposed sentence; rather, it is an administrative reward to provide an incentive for prisoners to comply with institutional disciplinary regulations." (cleaned up)); *see also Barber*, 560 U.S. at 481–83 (distinguishing between the sentence imposed and the time "actually served," which must be the same "with the sole statutory exception for good time credits" (emphasis omitted)). Further, Morrow's good-time credit has not yet vested and "may be revoked at any time before the date of [his] release." *Pepper*, 562 U.S. at 501 n.14; *see* 18 U.S.C. 3624(b)(2). The district court's factual finding that Morrow had only served half of his 66-month sentence was not clearly erroneous.

Next, we consider Morrow's argument that the district court's statement that "Defendant engaged in a serious fraudulent investment scheme, which, along with his co-defendant, caused over 300 victims to suffer losses of approximately $28 million" was clearly erroneous. Specifically, Morrow asserts that this is clearly erroneous because he was only responsible for a loss of approximately $7 million

among 175 victims. Morrow points to the PSR, which specifies that the restitution owed by Morrow was $7 million dollars among 175 victims. The government argues that Morrow is relying on an "overly technical" reading of the district court's use of the phrase "engaged in." The government further asserts that the record is clear that the transgressions of Morrow and his co-defendant were heavily intertwined.

In the district court's order denying Morrow's Section 3582(c)(1)(A) motion, it stressed the seriousness of Morrow and his co-defendant's fraudulent scheme. Even though Morrow pleaded guilty to only one count, the plea agreement explicitly stated that the district court could consider other parts of the conspiracy as relevant conduct. And in the indictment, the count to which Morrow pleaded guilty outlined losses of more than $28 million. The district court's statement that through the "serious fraudulent investment scheme," Morrow "*along with his co-defendant*, caused over 300 victims to suffer losses of approximately $28 million" was not clearly erroneous, even though Morrow pleaded guilty to only a portion of that scheme.

Additionally, the same district judge who denied Morrow's Section 3582(c)(1)(A) motion originally sentenced Morrow. When analyzing a district court's sentence-modification order, we do "not turn a blind eye to what the judge said at petitioner's initial sentencing," especially when the judge deciding the sentence-modification motion is "the same judge who had sentenced the petitioner

originally." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018). Instead, we look to "the record as a whole" because the record, and specifically "the record of the initial sentencing[,] sheds light on" the district court's sentence-modification order. *Id.*

Here, reading the denial order and sentencing hearing transcript together reveals that the district court understood the scope of Morrow's involvement and thoroughly reviewed the relevant Section 3553(a) factors. *See United States v. Garey*, 546 F.3d 1359, 1363 (11th Cir. 2008) ("[I]ndications in the record that the district court considered facts and circumstances falling within § 3553(a)'s factors will suffice.")

The district court stated that "this was a very large amount of fraud with a large amount of losses that went on for a long period of time." It then noted that Morrow's co-defendant "was more culpable" and that Morrow was involved in the scheme to a lesser extent. The district court's understanding of Morrow's degree of culpability was indeed reflected in its decision to sentence Morrow to just 66 months. Morrow's sentence was a significant downward variance from the 121 to 151 month sentencing guideline range and 30 months less than the sentence his co-defendant received. Indeed, that "substantial downward variance at sentencing" was one of the reasons that the district court gave for denying Morrow's Section 3582(c)(1)(A) motion. Because the district court did not base its decision on clearly erroneous

factual findings and gave adequate reasons for denying Morrow's Section 3582(c)(1)(A) motion, the district court did not abuse its discretion.

## IV.

For these reasons, we **AFFIRM** the district court's denial of Morrow's Section 3582(c)(1)(A) motion.