IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No.  18-13152-AA

———————————————

CITY OF MIAMI GARDENS,
a Florida municipal corporation,

Plaintiff - Appellant,

versus

WELLS FARGO & CO.,
WELLS FARGO BANK N.A.,

Defendants - Appellees.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

BEFORE WILSON, Acting Chief Judge, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, and LUCK, Circuit Judges.[*]

BY THE COURT:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service having voted against it (Rule 35, Federal Rules of Appellate Procedure), the Petition for Rehearing En Banc is DENIED.

WILLIAM PRYOR, Circuit Judge, joined by NEWSOM and BRANCH, Circuit Judges, respecting the denial of rehearing en banc:

A majority of the Court has voted not to rehear en banc our decision in *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274 (11th Cir. 2019), which held that the City of

---

[*] Chief Judge Ed Carnes and Judge Barbara Lagoa recused themselves and did not participate in this proceeding.

Miami Gardens lacked standing to bring its lawsuit under the Fair Housing Act against Wells Fargo. *Id.* at 1277–78. As members of the panel, we write to explain why our decision adheres to both Supreme Court and our precedent and to respond to Judge Wilson's dissenting opinion.

It is well established that the City, as the party invoking federal jurisdiction, bore the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And that burden increased with the successive stages of litigation: although mere allegations sufficed at the pleading stage, actual evidence was required to withstand summary judgment. *Id.*

In addition, federal courts *always* have "an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). To be sure, the Supreme Court has explained that, in limited circumstances, "elementary principles of procedural fairness" mandate that a court provide the party with "an opportunity to provide evidence of [its standing]" instead of *sua sponte* dismissing the action for lack of jurisdiction. *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 271 (2015). And our Court has held that the absence of notice of the need to prove standing may sometimes mandate the application of a more lenient standard for assessing standing. *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994).

Our decision adhered to these principles. The City failed to satisfy its burden of establishing standing. And we respected the concerns of fairness and notice demanded by precedent.

The City faced an uphill battle to establish its standing because it relied on an attenuated theory of injury. Its principal theory was that Wells Fargo steered minority borrowers into higher-cost loans that were more likely to go into foreclosure. These foreclosures then allegedly decreased the value of the vacant properties and neighboring properties, which allegedly caused economic injury to the City because property tax revenues decreased and its spending "to remedy

2

blight and unsafe and dangerous conditions" increased. *Miami Gardens*, 931 F.3d at 1278–79. To establish its standing, the City needed to prove that at least one of the purportedly discriminatory loans caused or would cause it to suffer a *de facto* injury that a favorable decision could redress. *Id.* at 1283.

In addition to standing, the City faced another hurdle: the statute of limitations. The City's complaint largely focused on purportedly discriminatory lending practices outside the applicable two-year limitations period. *See* 42 U.S.C. § 3613(a)(1)(A). But the City contended that all of Wells Fargo's alleged violations were actionable under the continuing-violation doctrine, which makes violations outside the limitations period actionable if the defendant engaged in "an unlawful practice that continue[d] into the limitations period . . . [and] the last asserted occurrence of that practice" was within the limitations period. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982) (footnote omitted). If the City could not establish a violation of the Act during the limitations period, its complaint would be untimely.

Wells Fargo moved to limit initial discovery to the threshold question whether the City's complaint was timely. The City objected to that motion on the grounds that it would prevent it from "prov[ing] its continuing violations and disparate impact allegations." The district court limited initial discovery to loans issued during the limitations period and later granted Wells Fargo's motion for summary judgment on the ground that the City had failed to establish that Wells Fargo violated the Act within the limitations period.

The focus on the limitations period in the district court does not mean that the parties ignored standing. To the contrary, Wells Fargo raised Article III standing "during the meet and confer process," in its answer to the operative complaint, and in its motion for summary judgment. In the motion for summary judgment, Wells Fargo recited the City's attenuated theory

3

of standing and argued that, because the litigation was at the summary judgment stage, the City needed to "actually produce some evidence that [it], and not just the borrower, ha[d] Article III standing to sustain a claim under the Fair Housing Act." Wells Fargo contended that the City lacked standing because it failed to establish that it suffered an injury from a loan issued during the limitations period. That argument was mistaken because a discriminatory loan issued at any point could have established the City's Article III standing. Nevertheless, Wells Fargo repeatedly contended that the injury and causation elements of standing were lacking.

The district court also considered the City's standing. It dismissed the City's initial complaint with a warning that any amended complaint would need to "allege . . . the facts that confer standing to complain about private home foreclosures, the specific injury to the [City], the precise number and dates of foreclosures, and the specific costs to the City of Miami Gardens." It even explained what the City would need to allege to satisfy each element of standing: "(1) how Miami Gardens is injured, (2) how that injury is traceable to the conduct of each Wells Fargo defendant, and (3) how the injury can be redressed with a favorable decision in this case."

The City modeled its complaint after allegations in similar litigation that we held met the requirements of Article III standing. *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1272–73 (11th Cir. 2015), *vacated and remanded on other grounds*, 137 S. Ct. 1296 (2017). But, as the Supreme Court has made clear, mere *allegations* are insufficient as the litigation progresses. *See Lujan*, 504 U.S. at 561. To this end, the district court had told the City to read *City of Miami*, 800 F.3d at 1273, which expressly warned Miami that it would need to prove its allegations as the litigation progressed—a task that we predicted might be "difficult." *Id.*

4

On appeal, Wells Fargo again argued in its brief that the City had failed to establish that it suffered an injury as a result of any loan issued during the limitations period. We then asked the parties to address standing at oral argument, and they did so.

The City pointed to two kinds of evidence to establish its standing. First, it pointed to an allegedly discriminatory loan, HC2, that "has been delinquent since it was issued," unlike a purportedly comparable loan issued to a nonminority borrower. *Miami Gardens*, 931 F.3d at 1283. The City contended that the delinquent loan "will likely go into foreclosure and cause the City to suffer the kind of economic injuries asserted in the operative complaint." *Id.* Second, it pointed to ten loans issued before the limitations period that have gone into foreclosure and argued that those loans have led to the economic injuries identified in the complaint. *Id.*

This evidence failed to satisfy either the injury or causation requirements of standing. *See id.* at 1283–84. As to loan HC2, we were left only to speculate whether its delinquency will lead to foreclosure, and if so, whether that foreclosure will impact property values, property-tax revenues, or municipal spending. And even if we were to assume those links in the causal chain were satisfied, nothing in the record supported an inference that it would be Wells Fargo's conduct that contributed to those injuries. Nor did the ten loans issued before the limitations period that have gone into foreclosure establish standing because the City failed to present evidence of the effect of the foreclosures on property-tax revenues or municipal spending. And nothing suggested that Wells Fargo issued these loans on discriminatory terms or that Wells Fargo's conduct contributed to the decline in property values. In short, the City failed to satisfy its burden at the summary-judgment stage of introducing evidence to establish its standing. Because the City failed to satisfy its burden, we were obliged to vacate the summary judgment against the City and remand for the district court to dismiss the action for lack of subject-matter

5

jurisdiction.

Judge Wilson argues that our decision conflicts with our precedent in *Huntsville* and with the precedent of the Supreme Court in *Alabama Legislative Black Caucus*. He argues that *Huntsville* stands for the proposition that "it is unfair to expect plaintiffs to conjure proof of standing if they were never put on notice that they would need to, and if they had limited opportunity to discover or present such evidence." Dissenting Op. at 11 n.1. He also stresses that in *Alabama Legislative Black Caucus*, as here, the defendant made a meritless challenge to the plaintiff's standing, and he suggests that the presence of a meritless challenge to standing means that a plaintiff lacks adequate notice of its need to prove standing. *See id.* at 12–13. But those decisions do not control here.

The contrast between this appeal and *Huntsville* is stark. In *Huntsville*, we applied only the pleading standard to determine whether the plaintiffs had standing to seek a preliminary injunction. 30 F.3d at 1336. We applied this more lenient standard because the defendant had not made any standing argument and "the plaintiffs had only a few hours of hearing time to present their preliminary injunction case and were thereby forced to limit their evidence to what they reasonably understood to be the contested issues." *Id.* Unlike the limited time the plaintiffs had in *Huntsville* to prepare their case, the City had more than two years between Wells Fargo's filing of its motion for summary judgment and the district court's order granting it. The City could have sought additional discovery to establish its standing in response to Wells Fargo's motion, which raised standing, but it failed to do so. *See* Fed. R. Civ. P. 56(d). It was not unfair to require the City to meet the summary-judgment standard for standing in this circumstance.

*Alabama Legislative Black Caucus* too is inapposite. In *Alabama Legislative Black Caucus*, the Supreme Court held that fairness concerns required giving the plaintiff an

6

opportunity to present evidence of its standing instead of *sua sponte* dismissing for lack of subject-matter jurisdiction. 575 U.S. at 270–71. Fairness concerns arose because the plaintiff had introduced evidence that led to at least a "common sense inference" that it had standing, neither the defendant nor the district court challenged the basis of that inference, and the plaintiff was easily able to proffer evidence that would have established its standing. *Id. Alabama Legislative Black Caucus* concluded that it was unfair to dismiss absent special notice to the plaintiff because the plaintiff reasonably believed that it had established its standing and the defendant had not argued to the contrary. *Id.* But contrary to Judge Wilson's suggestion, the lack of a meritorious challenge to a plaintiff's standing does not by itself make it unfair to dismiss *sua sponte* for lack of standing. Because the plaintiff in *Alabama Legislative Black Caucus* had introduced some evidence to establish at least an inference of standing, and the defendant had not challenged the plaintiff's evidence of standing, the Supreme Court reasoned that the plaintiff might have thought that the defendant did not contest the factual basis for its standing. *Id.* at 270. So in the absence of special notice that the plaintiff had not established its standing before dismissing the action, the Supreme Court required the district court to give the plaintiff another opportunity to prove its standing. *Id.* at 270–71.

That special notice of the need to establish standing was not required here. The City not only failed to establish its standing, it failed to so much as create an *inference* that it had standing. And it received repeated notice of its need to prove its standing throughout the litigation from both the district court and Wells Fargo. That Wells Fargo's argument lacked merit does not mean that it failed to provide the City with notice that it needed to establish its standing at the summary-judgment stage. After all, Wells Fargo repeatedly grappled with the City's theory of standing—even if in a different time-frame—and the elements of standing that we held

7

were lacking: injury and causation. The City faced those repeated challenges and knew from *City of Miami* that it would need to produce evidence of its standing. But unlike the plaintiff in *Alabama Legislative Black Caucus*, it failed to introduce evidence to create even an inference that it had suffered an injury fairly traceable to Wells Fargo's challenged conduct. In the face of Wells Fargo's repeated challenges, the City could not reasonably believe that it did not need to respond with evidence of its standing.

Judge Wilson also argues that the limitation on discovery by the district court makes this dismissal unfair. *See* Dissenting Op. at 13–14. To be sure, a district court should not grant summary judgment "until the party opposing the motion has had an adequate opportunity for discovery," but we have made clear that "the party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870–71 (11th Cir. 1988). If the opposing party fails to satisfy that burden, it cannot argue that the district court granted summary judgment prematurely by failing to order or await the results of further discovery. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1063–64 (11th Cir. 2015); *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843–44 (11th Cir. 1989). In the same way, it is not unfair if a plaintiff fails to alert the district court to its need for further discovery to prove its standing at summary judgment and a circuit court decides in the first instance that the plaintiff failed to establish standing. In either circumstance, the plaintiff has effectively consented to adjudication of the issues raised in the summary-judgment motion based on the existing record by failing to avail itself of the opportunity to seek further discovery.

The City failed to satisfy its "burden of calling to the district court's attention any outstanding discovery" on the standing issue. *Snook*, 859 F.2d at 871. The City filed a

declaration under Federal Rule of Civil Procedure 56(d)—the preferred vehicle for advising the district court of the need for additional discovery—but did not mention standing and later retracted the declaration and opposed Wells Fargo's motion for summary judgment on the merits. The City filed that Rule 56(d) declaration with a motion to strike or, in the alternative, stay or deny Wells Fargo's refiled motion for summary judgment to allow for additional discovery. And, to reiterate, Wells Fargo refiled its initial motion for summary judgment from over a year earlier that had raised the issue of Article III standing. Yet neither the City's declaration nor its motion stated that it needed additional discovery to satisfy its burden of establishing standing.

The City again failed to mention its need for additional discovery to establish its standing when the district court held a hearing to determine whether to consider Wells Fargo's refiled motion for summary judgment or to expand discovery. The district court specifically asked the City what additional evidence it would find useful before it ruled on Wells Fargo's motion. The City said that additional evidence would be "helpful to put some of the disputed issues and noise in perspective," but it never said that it needed any evidence to establish its standing.

The City cannot now contend that it is unfair to hold it to the record before the district court. It was the City's obligation to comply with Rule 56(d) by "specifically demonstrat[ing] how postponement of a ruling on the motion" would enable it, "by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Reflectone*, 862 F.2d at 843 (internal quotation marks omitted). Although we have acknowledged a limited "interests of justice" exception that allows district courts to postpone ruling on a motion for summary judgment in the absence of a party's compliance with the technical requirements of Rule 56(d), that limited exception still requires the opponent to provide notice in a manner equivalent to Rule

56(d). *Snook*, 859 F.2d at 871; *see also Reflectone*, 862 F.3d at 844. The City failed to satisfy that burden and so consented to the adjudication of the issues raised in Wells Fargo's motion based on the existing record.

And even when we gave the City the opportunity on appeal to explain how further discovery would have enabled it to establish its standing, the City came up short. It stated at oral argument that the additional evidence it would have sought was access to Wells Fargo's worldwide database of loans. *See* Oral Argument at 26:57–27:45 (June 14, 2019). Presumably, the City would have used that data to run the statistical analysis that it referred to in its complaint, but the City's averment left us only to speculate about how that analysis would turn out. That speculative contention is yet another reason why the fairness concerns in *Alabama Legislative Black Caucus* are not present. *See Ala. Legislative Black Caucus*, 575 U.S. at 271 (explaining that because of the evidence the plaintiff proffered to the Supreme Court, it had "no reason to believe that the [plaintiff] would have been unable to provide [evidence to establish its standing]").

Judge Wilson contends that the panel "treat[ed] the City like the teacher who takes away a student's pencils before a test, refuses to give them back, and then gives the student a failing grade when she turns in a blank page." Dissenting Op. at 14. But a more accurate analogy would be that the City opted to take an exam—one that it had every reason to know would be challenging and would require the use of pencils—yet it showed up with no writing instruments at all and failed to let the proctor know about its predicament. The City was obliged to come to this litigation prepared to prove its standing or to let the district court know that it did not have the discovery it needed to do so. The City cannot now complain that it was unfair to hold it responsible for its failing.

10

WILSON, Circuit Judge, joined by MARTIN, Circuit Judge, dissenting from the denial of rehearing en banc:

A panel of this court dismissed the City of Miami Gardens's Fair Housing Act (FHA) case for lack of Article III standing, sua sponte. It did so even though the City received neither proper notice that it failed to prove standing nor a legitimate opportunity to discover or produce the requisite evidence. But, in *Alabama Legislative Black Caucus v. Alabama*, the Supreme Court held that, when a plaintiff receives neither proper notice that it failed to prove standing nor an opportunity to produce the requisite evidence, sua sponte dismissal on Article III standing grounds violates "elementary principles of procedural fairness." 575 U.S. 254, 268–71 (2015). The panel's decision clearly conflicts with *Alabama Legislative Black Caucus*.[1] When a panel decision conflicts with Supreme Court precedent, en banc consideration is "necessary to secure and maintain uniformity of the court's decisions." Fed. R. App. P. 35(b)(1)(A); *see* Fed. R. App. P. 35(a)(1). Therefore, I dissent from the denial of rehearing en banc.

In *Alabama Legislative Black Caucus*, a racial gerrymandering case, a three-judge district court panel held that an organizational plaintiff lacked standing, citing insufficient evidence to demonstrate members' residency in the relevant districts. 575 U.S. at 268–69. The Supreme Court vacated and remanded. *Id.* at 258, 271. It held that "in these circumstances, elementary

---

[1] The panel's decision is also inconsistent with our precedent in *Church v. City of Huntsville*, in which we held that it is unfair to require standing evidence beyond the allegations in the complaint when the defendant did not "put[] the plaintiff[s] on notice that standing is contested" and the plaintiffs had a limited opportunity to present evidence. 30 F.3d 1332, 1336 (11th Cir. 1994). Although *Church* addressed standing in the context of a hearing on a preliminary injunction, *id.*, the point remains the same—it is unfair to expect plaintiffs to conjure proof of standing if they were never put on notice that they would need to, and if they had limited opportunity to discover or present such evidence.

principles of procedural fairness required that the [court], rather than acting *sua sponte*, give the [plaintiff] an opportunity to provide evidence" supporting its standing.  *Id.* at 271.

The "circumstances" in *Alabama Legislative Black Caucus* were these.  Before trial, the defendant had attacked the organizational plaintiff's Article III standing.  *See id.* at 270 (citing defendant's memorandum in support of motion for summary judgment).  The case went to trial. *Id.* at 260.  There the plaintiff had the quintessential opportunity to put on evidence of standing and did so—at least enough for an "inference" of standing.  *See id.* at 269–70.  And, "had it been asked," the plaintiff could have provided more evidence of standing, such as its own member residency list; it did not need discovery to access or produce such evidence.  *See id.* at 270–71.

If "elementary principles of procedural fairness required that the [court], rather than acting *sua sponte*, give the [plaintiff] an opportunity to provide evidence" supporting its standing there, *see id.* at 271, they do even more so here.  To start, in *Alabama Legislative Black Caucus*, the Supreme Court recognized that the defendant's Article III standing attack was off-base and thus failed to put the plaintiff on notice that it needed to shore up its standing.  *See id.* at 270 (noting that the state had attacked the organizational plaintiff's standing based on the idea that an organization "lives" nowhere, not based on "inadequate member residency").  As in that case, the defendant here—Wells Fargo—had attacked the City's Article III standing.[2]  But, as the panel here recognized, Wells Fargo's argument was off-base too because it focused on the "*statutory* requirement of timeliness"—i.e., the statute of limitations—rather than "the *constitutional* requirements of standing."  *See City of Miami Gardens*, 931 F.3d at 1283.  So, as

---

[2] The panel distinguishes *Alabama Legislative Black Caucus* by saying that it did "not purport to speak to circumstances like those of this appeal, in which the opposing party raised the issue of standing."  *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1286 (11th Cir. 2019) (per curiam).  The panel is demonstrably wrong; in fact, *Alabama Legislative Black Caucus* spoke to nearly identical circumstances.  *See Ala. Legislative Black Caucus*, 575 U.S. at 270.

12

in *Alabama Legislative Black Caucus*, Wells Fargo's meritless argument failed to put the City on notice that it needed to demonstrate that it met the *constitutional* requirements of standing.[3]

What is more, unlike in *Alabama Legislative Black Caucus*, the City of Miami Gardens had *no* opportunity to prove its standing, much less the opportunity of a trial. Not only that—despite its repeated requests, the City never even got the necessary *discovery* to prove its standing, something the *Alabama Legislative Black Caucus* plaintiff didn't need.

Here, unlike in *Alabama Legislative Black Caucus*, the defendant Wells Fargo controlled the evidence that the City needed to prove its Article III standing. For example, one of the City's alleged injuries was reduced property tax revenues. To prove that Wells Fargo caused reduced property tax revenues, the City first needed to identify more FHA-violative loans by Wells Fargo dating years before the statute-of-limitations period. For that, the City needed information from Wells Fargo's database, as it alleged in its complaint. And it could only access this information in this database via discovery. Yet from the outset, and over the City's objections, the district court limited discovery to the statute-of-limitations period and stayed "discovery on all matters

---

[3] Note that there were other circumstances that gave the City every reason to believe that the district court had no concerns whatsoever about the City's standing at partial summary judgment, which was limited to the statute-of-limitations issue. Suffice it to say, the district court diligently evaluated and monitored its jurisdiction and the City's standing for *years*. The district court stayed this case pending the results of appeals to this court in two other cases: *City of Miami v. Bank of Am. Corp.*, No. 13-24506 (S.D. Fla.) and *City of Miami v. Wells Fargo & Co.*, No. 13-24508 (S.D. Fla.), both of which involved standing issues for FHA claims virtually identical to those here. After this court held in both cases that the city plaintiff had adequately alleged facts to show Article III standing, *see City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1272–73 (11th Cir. 2015); *City of Miami v. Wells Fargo & Co.*, 801 F.3d 1258, 1265–66 (11th Cir. 2015), the district court in this case lifted the stay. When the Supreme Court granted certiorari in those cases, the district court stayed this case again. Ultimately the Supreme Court vacated and remanded the cases without addressing or suggesting any issue with Article III standing. *Bank of Am. Corp. v. City of Miami*, 581 U.S. __, 137 S. Ct. 1296, 1306 (2017). Thus, following the appeals, everyone thought the City of Miami Gardens had Article III standing. The district court lifted its stay and allowed this case to proceed.

unrelated to Wells Fargo loans originated [during the statute-of-limitations period] until resolution of the parties' partial summary judgment motions."

Because of this dependency on and deprivation of discovery, unlike in *Alabama Legislative Black Caucus*, the City could not have snapped its fingers and produced evidence to prove standing. It thus asked *repeatedly* for full discovery, i.e., discovery related to Wells Fargo loans originated before the statute-of-limitations period—discovery necessary to prove its injuries were fairly traceable to Wells Fargo's conduct. But the City never got that discovery. Not after it objected to the initial discovery limitation and stay. Not after it argued time and again for full discovery. Not after its motions to compel full discovery. Not ever. Under *Alabama Legislative Black Caucus*, "elementary principles of procedural fairness required that the [panel], rather than acting *sua sponte*, give the [City]" that which it never got—full discovery. *See* 575 U.S. at 271.

The panel tried to frame appellate briefing and oral argument as legitimate opportunities for the City to produce evidence of its standing. But briefing and oral argument are no substitutes for discovery. An "opportunity" to show evidence of standing is worthless if the plaintiff never had the opportunity to discover such evidence. Thus, it is no surprise to me—nor should it have been to the panel—that the City showed up empty handed at briefing and oral argument.

In the end, the panel afforded the City nothing more than the illusion of procedural fairness. It treats the City like the teacher who takes away a student's pencils before a test, refuses to give them back, and then gives the student a failing grade when she turns in a blank page. That is simply not fair.

14