[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15026
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-24364-MGC

MARIAM GRIGORIAN,

                                        Plaintiff - Appellant,

versus

FCA US LLC,
a Michigan Limited Liability Company,

                                        Defendant - Third Party Plaintiff - Appellee,

MUDD, INC.,

                                        Third Party Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 9, 2020)

Before MARTIN, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Mariam Grigorian appeals from the district court's order dismissing her case for lack of standing.  Grigorian filed this action under the Telephone Consumer Protection Act ("TCPA") on behalf of a class of similarly situated people, alleging that the prerecorded message transmitted on behalf of FCA US, LLC ("FCA") to the voice mailbox on her cell phone violated the TCPA.  After careful review, we affirm.

**I.**

FCA manufactures motor vehicles and sells those vehicles to dealerships.  In 2018, FCA contracted with a third party to transmit prerecorded calls to consumers to advertise FCA's Chrysler Pacifica Hybrid minivan.  Pursuant to this agreement, Grigorian's and the putative class members' cellular telephone numbers were purchased from a third party to use in advertising FCA's vehicles.  On July 17, 2018, Grigorian received the following prerecorded voicemail message on her cell phone:

> On behalf of Chrysler brand headquarters with some exciting information about the new Chrysler Pacifica Hybrid during Chrysler's summer clearance event. Alternative fuel vehicle owners are eligible to receive an additional $1000 bonus cash above and beyond all current manufacturer and dealer incentives. This $1000 bonus cash is applicable to the lease or purchase of the new 2018 Chrysler Pacifica Hybrid. This incentive is

2

available for a limited time so please do not delay. Visit
your closest Chrysler dealership and take advantage of
your additional $1000 bonus cash.

In addition to Grigorian, over 89,000 people received FCA's prerecorded message.

Grigorian alleged that neither she nor any member of the putative class consented to FCA contacting them via prerecorded marketing calls. The prerecorded voicemails were delivered through what the industry calls a "ringless" voicemail, meaning the ability to answer or block the phone call is bypassed because the messages are automatically deposited into the recipient's voice mailbox. This technology operates like other automated processes for delivering prerecorded messages in that the transmission consists of a landline-to-landline connection between the text messaging platform and the cellular carrier's short message service center.

Grigorian filed this action on behalf of herself and all consumers who received FCA's prerecorded message solicitations. She alleged that FCA's unsolicited and prerecorded message caused her harm, including invasion of her privacy, aggravation, annoyance, and intrusion on seclusion. As a result of this harm, Grigorian sought injunctive relief and an award of statutory damages, as well as any legal or equitable remedies available as a result of FCA's TCPA violations.

FCA repeatedly argued that Grigorian lacked standing throughout the district court proceedings.  In its motion to dismiss Grigorian's amended complaint, which was filed after the parties engaged in discovery, FCA again argued Grigorian lacked standing and submitted evidence to support the argument.  Though it framed its argument as one under Rule 12(b)(6), FCA explained that it was asserting a "factual attack," such that the district court must look beyond the pleadings to evidence in the record.  This motion was pending when FCA moved for summary judgment on several grounds, including lack of standing.  But, after submitting its summary judgment motion, FCA withdrew the motion to dismiss, explaining that those issues and arguments presented had been subsequently submitted "on a more-complete factual record via its motion for summary judgment."

The district court then held a hearing on standing.  At the hearing, the district court noted that "I don't think either of you filed a motion on this issue related to standing."  FCA, however, explained that the issue was raised in the summary judgment motion pending before the court.  At the end of the hearing, the district court found Grigorian suffered "no concrete injury despite what might be seen as a technical violation of the statute."  It then entered an order dismissing the case without prejudice.  Grigorian timely appealed.

4

**II.**

Whether Grigorian lacked standing is dispositive of all issues raised in relation to the dismissal of her complaint.  A plaintiff bears the burden of establishing she has standing.  City of Miami Gardens v. Wells Fargo & Co., 956 F.3d 1319, 1320 (11th Cir. 2020) (William Pryor, J., respecting the denial of rehearing en banc).  "[T]hat burden increase[s] with the successive stages of litigation: although mere allegations suffice[] at the pleading stage, actual evidence [is] required to withstand summary judgment."  Id.  Article III standing has three elements: the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  Hallums v. Infinity Ins. Co., 945 F.3d 1144, 1147 (11th Cir. 2019) (quoting Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016)).  We review de novo the district court's determination that a plaintiff lacked standing.  BBX Capital v. Fed. Deposit Ins. Corp., 956 F.3d 1304, 1312 (11th Cir. 2020) (per curiam).

The injury-in-fact element is the "first and foremost" of the Article III requirements.  Hallums, 945 F.3d at 1147 (quotation marks omitted).  To establish injury in fact, Grigorian must show that she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  Id. (quotation marks omitted).  FCA's theory is that

5

Grigorian alleged only a "bare procedural violation" of the TCPA, which is not sufficiently concrete to constitute an injury-in-fact.

To support that she has standing, Grigorian pointed to excerpts from her deposition testimony, among other things. Grigorian testified that she first became aware of the voicemail while she was studying for the Florida bar exam. She did not remember hearing her phone ring or hearing a sound to indicate she had a voicemail; rather, she saw the number 1 next to the voicemail icon. Grigorian said her phone was still able to receive data and calls, but she was not able to use her phone or access any other applications while she was listening to the voicemail. She did not incur any financial loss as a result of the voicemail. But she did incur a loss of time—Grigorian said she had to stop studying in order to listen to the voicemail, and she spent time afterwards trying to figure out how her information was obtained and why she was being called.

To determine if these facts support a concrete injury, we must review our TCPA precedent. See Bochese v. Town of Ponce Inlet, 405 F.3d 964, 976 (11th Cir. 2005) (recognizing that standing "often turns on the nature and source of the claim asserted" (quotation marks omitted)). Under the TCPA, we have held that a plaintiff suffers an injury in fact when she receives an unwanted fax that occupies the fax machine during the time the unwanted fax is being sent and shoulders the cost of printing the unsolicited fax. See Florence Endocrine Clinic, PLLC v.

6

Arriva Medical, LLC, 858 F.3d 1362, 1366 (11th Cir. 2017).  And, like a fax, an unwanted phone call is intrusive—in some ways more intrusive, "since a ringing phone requires immediate attention," and the recipient of the call "may also bear the cost of telephone minutes."  Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1269–70 (11th Cir. 2019).  Thus, because an unwanted call "uses some of the phone owner's time and mental energy, both of which are precious," the recipient of "more than one unwanted telemarketing call" has suffered an injury under the TCPA.  Id. (quotation marks omitted); see also Glasser v. Hilton Grand Vacations Co., LLC, 948 F.3d 1301, 1305–06 (11th Cir. 2020) (holding that plaintiffs who received "over a dozen unsolicited phone calls to their cell phones" established injury-in-fact).

However, this Court has also recognized that receiving a single text message does not cause the recipient to incur tangible costs as in the case of receiving a fax.  See Salcedo v. Hanna, 936 F.3d 1162, 1167–68 (11th Cir. 2019).  But we have recognized that intangible costs, such as the loss of time and unavailability of the device, may suffice to show standing.  See id. at 1167–68 (distinguishing one text message from one fax in Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, DDS, PA, 781 F.3d 1245, 1252 (11th Cir. 2015)).  In its analysis, Salcedo treated loss of time separate from the unavailability of the device.  See id. at 1168.  However, Salcedo relied on Palm Beach Golf Center, which considered the loss of

7

time and unavailability as one and the same.[1]  See Palm Beach Golf Center, 781 F.3d at 1250–52 (holding that plaintiff lost one available minute to receive legitimate faxes while an unwanted fax occupied the machine).

Here, Grigorian has provided facts that she lost personal time listening to the voicemail.  She has not, however, provided facts to show that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time.  Without more, we cannot say that she met her burden to show she had standing, particularly in light of this Court's holdings in Palm Beach Golf Center and Salcedo.[2]  And because "this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury," we must leave in place the district court's dismissal of Grigorian's case.[3]  See Bochese, 405 F.3d at 976 (quotation marks omitted).

---

[1] In Palm Beach Golf Center, this Court agreed with the plaintiff's theory that "the specific injury targeted by the TCPA is the sending of the fax and resulting occupation of the recipient's telephone line and fax machine."  781 F.3d at 1250 (emphasis added).  We held that the plaintiff had Article III standing because the injury took "the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data (which, in this case, was one minute)."  Id. at 1251.  This one-minute transmission occupied the plaintiff's fax machine and rendered it "unavailable for legitimate business messages."  Id. at 1252 (quotation marks omitted) (alteration omitted)).

[2] This analysis may be different if a plaintiff alleges multiple ringless voicemails.  See Salcedo, 936 F.3d at 1174 (Jill Pryor, J., concurring in judgment) (noting that Salcedo "leaves unaddressed whether a plaintiff who alleged that he had received multiple unwanted and unsolicited text messages may have standing to sue under the TCPA").

[3] The parties argue over whether a "ringless" prerecorded voicemail is a call covered by the TCPA.  However, because we may affirm on any ground that is supported by the record, we decline to reach this issue.

**III.**

The only remaining issue is whether the district court erred by dismissing Grigorian's Rule 59 motion, in which she sought leave to amend her complaint. Grigorian admits that the district court dismissed her complaint without prejudice, but says because the order directed the clerk to close the case, she believed that order was a final and appealable order and thus submitted a notice of appeal.

Unfortunately for Grigorian, our precedent requires us to conclude that she waived any right to amend her complaint when she filed her notice of appeal. See Briehler v. City of Miami, 926 F.2d 1001, 1002–03 (11th Cir. 1991) (per curiam) (holding that when a plaintiff has the choice of either pursuing a permissive right to amend a complaint after dismissal or appealing the order, she waives her right to amend upon filing a notice of appeal). And, because she waived the right to amend, "there is nothing left for the district court to do"; the dismissal order becomes final and the district court is stripped of jurisdiction. See id. at 1003. For that reason, the district court did not err in denying Grigorian's Rule 59 motion.

**AFFIRMED.**

9